Maria P. Vallejo, Esq.
Chasan Lamparello Mallon & Cappuzzo, PC
300 Lighting Way, Suite 200
Secaucus, New Jersey 07094
(201) 348-6000
mvallejo@chasanlaw.com
Attorneys for Plaintiff Rashmin Patel
Our File No: 15673-3500

**UNITED STATE DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **RASHMIN M. PATEL,**<br><br>     **Plaintiff,**<br><br>     v.<br><br>**JIGAR P. PATEL,**<br><br>     **Defendant.** | **Civil Action No.:**<br><br><br>**COMPLAINT AND JURY DEMAND** |

Plaintiff Rashmin M. Patel, by and through counsel, and for the Complaint against Defendant Jigar P. Patel state as follows:

### THE PARTIES

1.   Rashmin Patel ("Plaintiff") is a resident of the State of New Jersey with an address of 107 Moller Street, Secaucus, New Jersey 07094.

2.   At all times relevant herein, Plaintiff has lived at the above New Jersey address.

1

3. Jigar P. Patel ("Defendant") is a resident of the State of Massachusetts with an address of 24 Cudworth Lane, Sudbury, MA, 01776.

4. At all times relevant herein, Defendant has lived at the above Massachusetts address.

## NATURE OF ACTION, JURISDICTION AND VENUE

5. This is an action seeking legal relief for: (1) breach of contract; (2) unjust enrichment; (3) fraud/intentional misrepresentation; (4) breach of the covenant of good faith and fair dealing; and (5) violation of the New Jersey Uniform Fraudulent Transfer Act, N.J.S.A. 25:2-20.

6. This Court has original jurisdiction over Plaintiff's claims, pursuant to 28 § U.S.C. 1332, as the amount in controversy exceeds $75,000 and the parties are diverse in citizenship.

7. Plaintiff is an individual, and a citizen of the State of New Jersey.

8. Defendant is an individual, and a citizen of the State of Massachusetts.

9. The amount in controversy, not counting interest and costs of court, exceeds $500,000.

10. Venue is appropriate in this Court, pursuant to 28 U.S.C. § 1391, because Plaintiff resides in this district and a

substantial part of the events giving rise to the claims in this Complaint occurred in this district.

## FACTUAL ALLEGATIONS

11. From January 1, 2016 through December 30, 2016, Plaintiff loaned Defendant $500,000 through a serious of five loans as outlined below.

**First Loan for $300,000**:

12. Mahendra C. Patel ("Mahendra") is a distant relative of Plaintiff and a childhood friend of Defendant from India.

13. In November 2015, Mahendra introduced Plaintiff to Defendant to encourage Plaintiff to loan monies to Defendant.

14. Mahendra told Plaintiff that Defendant was a "very close friend" who was credit worthy and that Mahendra would personally guaranty repayment of any loans.

15. In November and December 2015, Plaintiff and Defendant (collectively "Parties") spoke numerous times by telephone to negotiate the terms of an initial loan for $300,000.

16. Plaintiff is not in the business of loaning monies.

17. Plaintiff explained to Defendant that any monies loaned would be coming from his and his family's personal savings and would require a customary 12% annual interest rate.

18. The 12% annual interest rate, known as "tako vyag" in the Hindu Indian community in the State of Gujarat, India, was

3

the typical rate used for personal loans made within that community in India and in the United States at the time.

19. Defendant agreed to pay the 12% interest rate, but requested that the promissory note reflect a 3% interest rate.

20. On January 1, 2016, Defendant travelled to Plaintiff's Secaucus, NJ home, where the Parties confirmed the loan terms and executed the promissory note.

21. During these discussions, Defendant repeatedly assured Plaintiff that he would repay the full loan amounts, plus 12% interest.

22. Based on Defendant's representations, Plaintiff agreed to loan the monies to Defendant.

23. The Parties executed the promissory note for $300,000 ("First Loan") while in Plaintiff's New Jersey home. (**Exhibit 1**)

24. Plaintiff then handed Defendant a personal check (Check No. 156) for $300,000 (**Exhibit 2**).

25. The First Loan had a maturity date of December 31, 2020 and required five, equal annual payments comprised of simple interest only due on the 31st day of December each year until the maturity date.

26. A lump sum payment of the entire principal was due on December 31, 2020.

27. In the event of default, the promissory note included an acceleration clause, whereby Plaintiff could demand immediate

4

repayment of the outstanding principle and interest, including all costs and reasonable attorneys' fees.

28. The promissory note also included a provision requiring the Defendant to pay Plaintiff all costs of collection and enforcement of the note, including reasonable attorneys' fees and court costs in addition to other amounts due.

**Second Loan for $50,000**:

29. In February 2016, Defendant approached Plaintiff asking for an additional $50,000 loan.

30. Through a series of telephone calls, the Parties discussed the terms of the proposed second loan ("Second Loan"), which they agreed would have identical terms to the First Loan.

31. During these calls, Defendant repeatedly assured Plaintiff that he would pay a 12% annual interest rate.

32. Based on Defendant's representations, Plaintiff agreed to loan Defendant an additional $50,000.

33. The Parties executed the promissory note, dated March 1, 2016, memorializing the terms of the Second Loan. (**Exhibit 3**)

34. On or about February 22, 2016, Plaintiff mailed Defendant a personal check (Check No. 159) for the loan amount of $50,000. (**Exhibit 4**)

**Third Loan for $50,000**:

35. In May 2016, Defendant again reached out to Plaintiff and asked if he would loan him an additional $50,000.

5

36. The Parties discussed the terms of the proposed third loan ("Third Loan") by telephone and agreed to the same terms as the First and Second Loans.

37. Throughout those phone conversations, Defendant promised to repay the Third Loan at 12% annual interest.

38. Relying upon Defendant's representations, Plaintiff agreed to the Third Loan and sent Defendant a personal check (Check No. 162) in the amount of $50,000 on May 23, 2016. (**Exhibit 5**)

39. On June 30, 2016, the Parties executed a promissory note for the Third Loan. (**Exhibit 6**)

**Fourth Loan for $50,000**:

40. In late July, Defendant again asked Plaintiff for a fourth loan in the amount of $50,000.

41. Through a series of phone calls, the Parties discussed the terms of the proposed fourth loan ("Fourth Loan"), which would be identical to the prior loans, and Defendant confirmed that he would pay 12% interest.

42. Plaintiff once again agreed to lend the money and based on Defendant's verbal representations.

43. On July 31, 2016, Defendant travelled to New Jersey to meet with Plaintiff at the Secaucus Temple, Secaucus, NJ.

6

44. At the meeting, Plaintiff handed Defendant a personal check (Check No. 167) in the loan amount of $50,000 ("Fourth Loan"). (**Exhibit 7**)

**Fifth Loan for $50,000**:

45. In December 2016, Defendant contacted Plaintiff and asked to borrow a final $50,000 on the same terms as the prior four loans.

46. Defendant again verbally reassured Plaintiff that he would pay all of the loans at a 12% interest.

47. Relying upon Defendant's representations, Plaintiff agreed to loan Defendant a final $50,000 ("Fifth Loan"), increasing the total loan amount to $500,000.

48. The Parties agreed to prepare and execute a fourth promissory note ("Combined Note") that memorialized the total loan amount of $500,000 and consolidated all of the loan terms into a single document.

49. The Combined Note included terms identical to those included in the earlier three promissory notes, including but not limited to the following relevant terms:

    a. Defendant must pay annual interest due on December 31st of year through the maturity date;

    b. The Combined Note had a maturity date of December 31, 2020, at which time Defendant agreed to pay

        the entire principal balance due of $500,000 to Plaintiff;

    c.  If Plaintiff needed to conduct collection and enforcement of the note, Defendant is responsible for attorneys' fees and court costs in addition to other amounts due; and

    d.  The Combined Note is governed, constructed and interpreted through and under the laws of the State of New Jersey.

50. In preparation for executing a Combined Note, Plaintiff sent Defendant a personal check (Check No. 171) for the $50,000 for the Fifth Loan on December 26, 2016. (**Exhibit 8**)

51. In early January 2017, Defendant travelled to New Jersey to meet with Plaintiff and execute the Combined Note.

52. During a meeting that lasted for several hours, Defendant verbally assured Plaintiff that he had the ability to repay the $500,000 in loans, plus the agreed upon 12% interest.

53. The Parties executed the Combined Note, dated January 4, 2017, while Defendant was in New Jersey. (**Exhibit 9**)

**Interest Payments Made**:

54.    Defendant made the following interest payments:

| For Year Ending: | Interest Due: | Interest Paid: |
| --- | --- | --- |
| 2016 | $40,000 | $40,000 |

| 2017 | $60,000 | $60,000 |
| 2018 | $60,000 | $60,000 |
| 2019 | $60,000 | $50,000 |
| 2020 | $60,000 | None |

55. The interest payments made from 2016 through 2018 were in the amount equivalent to the agreed upon 12% per annum interest rate.

56. Defendant made full and timely interest payments for 2016 and 2017.

57. However, Defendant was late by more than a 1-1/2 months in making the 2018 interest payment.

58. As a result of the late payment, Plaintiff became concerned about Defendant's ability to meet his financial obligations for the loans.

59. Plaintiff travelled to Massachusetts and verbally advised Defendant that he was in breach of the agreement due to his late 2018 interest payment.

60. Plaintiff explained to Defendant that a continued breach of the agreements would result in the acceleration of the payments of the total amounts due.

**Defendant's Default on Interest Payments Due**:

61. From October 31, 2019 through December 31, 2019, Defendant paid $50,000 in interest for 2019, which was $10,000 less than the amount due.

62. Despite repeated demands by Plaintiff, Defendant failed to pay the outstanding interest due for 2019.

63. From December 2019 through February 2020, Plaintiff repeatedly attempted to contact Defendant to advise of his default under the notes and acceleration of the monies due.

64. Defendant ignored Plaintiff's demands and failed to make payment.

65. Fearing Defendant was not going to continue to disregard his obligations, Plaintiff spoke with Defendant in-person and by telephone on the following dates:

    a. On February 23, 2020, Defendant told Plaintiff in-person that he would repay $200,000 by July 1, 2020, and $300,000 shortly thereafter;

    b. On September 20, 2020, Defendant promised Plaintiff in-person that he would make a $100,000 payment within two weeks;

    c. On October 14, 2020 and October 30, 2020, Defendant spoke with Plaintiff by phone and claimed that he would make a $300,000 payment by November 1, 2020.

66. Despite these representations, Defendant made no further payments.

67. On December 20, 2020 Plaintiff served Defendant with a Notice of Default for Defendant's failure to pay the full interest due for 2019. (**Exhibit 10**)

68. In the Notice of Default, Plaintiff demanded that Defendant correct the breach and pay a total of $570,000 by the Notes' maturity date on December 31, 2020.

69. Plaintiff's $570,000 demand was comprised of $500,000 in principal and $70,000 in interest, which included the outstanding $10,000 in 2019 interest and $60,000 due for 2020.

70. Defendant ignored the default notice and made no payments.

71. On January 1, 2021, Plaintiff served Defendant with a second Notice of Default, again demanding payment of $570,000. (**Exhibit 11**)

72. As of the date of the filing of this Complaint, Defendant has not made any further payments.

**Defendant's Transfer of a Commercial Property to His Brother After Default on the Promissory Note**:

73. In February 2, 2006, Defendant created the Jay Veer Realty Trust ("JVR Trust"), in which he was a trustee. (**Exhibit 12**)

11

74. His wife, Ashaben J. Patel ("Ashaben"), was added as a trustee on August 10, 2019. (**Exhibit 13**)

75. Defendant and Ashaben are the sole trustees of JVR Trust.

76. JVR Trust is a revocable trust, in which Defendant retains control of any trust property.

77. In May 2006, JVR Trust acquired a commercial property located at 21 Front Street, Shirley, Mass. ("Commercial Property"). (**Exhibit 14**)

78. After making only a partial interest payment for 2019 to Plaintiff, Defendant and Ashaben engaged in a scheme to delay, hinder or defraud Plaintiff.

79. On November 25, 2019, Defendant's brother Chirag Patel ("Chirag") created Mahi One Realty LLC ("Mahi LLC"). (**Exhibit 15)**

80. Less than a month later on December 24, 2019, Defendant and Ashaben, through JVR Trust, sold the Commercial Property to Mahi LLC. (**Exhibit 16)**

81. In addition to the monies owed to Plaintiff, Defendant has numerous liens and judgments filed against him, totaling more than $180,000, according to public records. (**Exhibit 17**)

**Similar Acts of Fraudulent**

82. Since 2010, Defendant has engaged in the same conduct of borrowing large sums of money from unsuspecting members of

the Gujarat Indian community with the promise of repaying the monies at the standard tako vyag interest rate of 12%.

83. Similar to Plaintiff, each of the lenders were not in the business of loaning money and relied upon oral promises made by Defendant.

84. Unlike Plaintiff, most of these other lenders gave Defendant cash and did not memorialize the loans with a contract/promissory note.

85. In each of those prior instances, Defendant negotiated to make interest-only payments for the first few years with a final balloon payment due for the principal.

86. After making several interest payments, Defendant would cease making all payments and ultimately never repaid the principal and outstanding interest due to the lenders.

87. The various lenders who were damaged by Defendant's scheme are believed to currently live in Georgia, Kentucky, New York and Massachusetts.

**COUNT ONE**
**(Breach of Contract)**

1. Plaintiff incorporates by reference every allegation made previously herein.

2. Pursuant to the promissory notes entered into between Plaintiff and Defendant, Defendant is obligated to pay annual

interest on the loans by December 31 of each year, and must repay the full $500,000 in principal by December 31, 2020.

3. Defendant breached the terms of the promissory notes by failing to pay $70,000 in interest payments due and owing for 2019 and 2020.

4. Defendant further breached the agreements by failing to pay $500,000 in principal that was due and owing on December 31, 2020.

5. Payment has been repeatedly demanded and has not been made.

6. There accordingly remains due and owing, the total amount of $570,000, plus continuing interest.

**WHEREFORE**, Plaintiff demands judgment against Defendant for $570,000, together with attorneys' fees, interest, costs of suit and such other relief that the Court deem equitable and just.

### COUNT TWO
### (Unjust Enrichment)

7. Plaintiff incorporates by reference every allegation made previously herein.

8. Defendant received $500,000 in loans from Plaintiff with the promise to repay the entire loan amount at a 12% per annum interest rate.

9. Defendant has failed to repay the $500,000 in loans, along with $70,000 in interest due and owing to Plaintiff.

14

10. Plaintiff has not been repaid and for the past five years, he has been deprived of his ability to use those funds.

11. Defendant has been unjustly enriched at the expense and detriment of Plaintiff.

12. As a result of Defendant's conduct, Plaintiff suffered damages of $570,000.

**WHEREFORE,** Plaintiff demands judgment on this Count against Defendant for compensatory damages, together with interest, costs of suit and other relief as the Court may deem just and proper.

### COUNT THREE
### (Fraud/Intentional Misrepresentation)

13. Plaintiff incorporates by reference every allegation made previously herein.

14. For the past 10 years, Defendant has been engaging in scheme where he would borrow monies from unsuspecting members of his Indian community with the promise that they would receive 12% annual interest.

15. In each of those cases, Defendant never repaid the loan and portion of the interest due.

16. Similar to those earlier deals, Defendant promised to pay Plaintiff 12% interest on $500,000 in proposed loans.

17. Defendant intended for Plaintiff to rely on these false statements to entice Plaintiff to loan him the monies.

18. Plaintiff believed and justifiably relied upon Defendant's false representations based on Plaintiff's assurances and his long-standing relationship with Mahendra.

19. As a result, Plaintiff lent Defendant a total of $500,000.

20. Defendant never repaid the $500,000 in principal and $70,000 in interest due and owing, despite repeated demands.

21. As a result of Defendant's fraudulent conduct, Plaintiff suffered damages of $570,000.

**WHEREFORE**, Plaintiff demands judgment against Defendant for compensatory and punitive damages, together with interest, costs of suit and other relief as the Court may deem just and proper.

### COUNT FOUR
### (Breach of the Covenant of Good Faith and Fair Dealing)

22. Plaintiff incorporates by reference every allegation made previously herein.

23. The Parties entered into and executed promissory notes memorializing $500,000 in loans from Plaintiff to Defendant.

24. Defendant acted in bad faith when he entered into the promissory notes and accepted the $500,000 in loans with the intent of never repaying Plaintiff.

25. Defendant owes and has refused to pay Plaintiff the full principal and interest due.

26. As a result of Defendant's conduct, Plaintiff suffered damages of $570,000.

**WHEREFORE**, Plaintiff demands judgment on this Count against Defendant for compensatory damages, together with interest, costs of suit and other relief as the Court may deem just and proper.

## COUNT FIVE
### (Violation of the New Jersey Uniform Fraudulent Transfer Act N.J.S.A. § 25:2-20)

27. Plaintiff incorporates by reference every allegation made previously herein.

28. At all relevant times, Defendant has been a debtor to Plaintiff after accepting $500,000 in loans and entering into (4) promissory notes memorializing those loans.

29. After failing to pay the full interest due in for 2019, Defendant and Ashaben entered into a scheme to delay, hinder or defraud Plaintiff.

30. Defendant and Ashaben are trustees of the revocable trust, JVR Trust.

31. On November 25, 2019, Defendant's brother Chirag created Mahi LLC with the purpose of acquiring the Commercial Property from JVR Trust to shield it from Plaintiff and other creditors.

32. Less than a month later on December 24, 2019, Defendant and Ashaben, through JVR Trust, effectuated the

fraudulent transfer and sold the Commercial Property to Mahi LLC.

33. Defendant has refused to make payments on the outstanding interest and principal due and owing to Plaintiff.

34. The transfer constitutes a fraudulent transfer, as defined in the New Jersey Uniform Fraudulent Transfer Act, N.J.S.A. 25:2-20 et seq.

35. Transfers of properties held in trust are not exempt from creditors when the fraudulent conveyances are made in violation of the New Jersey Uniform Fraudulent Transfer Act, N.J.S.A. 25:2-20 et seq.

36. Defendant's conduct was willful, wanton and without regard to the rights of the Plaintiff.

**WHEREFORE,** Plaintiff respectfully requests that this Court enter Judgment against Defendant and grant Plaintiff the following relief:

a. Enter a Judgment voiding the fraudulent transfer to the extent necessary to satisfy the costs and damages asserted by Plaintiff;

b. Enter other equitable relief, or any type of relief available under N.J.S.A. 25:2-29 or otherwise to put Plaintiff in the position that he would have been in, but for the fraudulent transfer;

    c.    An injunction against further disposition by the debtor or transferee, or both, of the Commercial Property or of other property that is owed by Defendant.

### JURY DEMAND

Plaintiff hereby demands trial by jury on all issues in the within action so triable.

### DESIGNATION OF TRIAL COUNSEL

Maria P. Vallejo, Esq. is hereby designated as trial counsel on behalf of Plaintiff.

### CERTIFICATION OF NO OTHER ACTIONS OR PARTIES

I hereby certify that there are no other parties known to me at this time who should be joined as parties to this action.

                      Chasan Lamparello, Mallon & Cappuzzo, PC
                      Attorneys for Plaintiff Rashmin M. Patel

                      _____
By:  Maria P. Vallejo, Esq.