<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| RASHMIN M. PATEL,<br><br>     Plaintiff,<br><br>     v.<br><br>JIGAR P. PATEL, et al.,<br><br>     Defendants. | No. 21cv1811 (EP) (ESK)<br><br>**OPINION** |

**PADIN**, **District Judge.**

Plaintiff/lender Rashmin Patel, a New Jersey resident, alleges that Defendant/borrower Jigar Patel ("Jigar"), a Massachusetts resident, failed to repay multiple loans totaling over $500,000.  D.E. 61 ("Am. Compl." or "Amended Complaint").  Plaintiff alleges that Defendant Mahendra Patel ("Mahendra"), a Pennsylvania resident, introduced Jigar to Plaintiff and personally guaranteed Jigar's debt.   And Plaintiff also alleges that Defendants Ashaben Patel ("Ashaben," Jigar's wife) and Chirag Patel ("Chirag," Jigar's brother), both Massachusetts residents (together with Jigar, the "Massachusetts Defendants"), facilitated a fraudulent commercial property transfer meant to hinder Plaintiff's enforcement of any judgment against Jigar.

Mahendra moves, pursuant to Federal Rule of Civil Procedure 12(b)(2) and 12(b)(6), to dismiss the Amended Complaint for lack of personal jurisdiction and to dismiss for failure to state a claim.  The Massachusetts Defendants also move, jointly, to dismiss the claims against Ashaben and Chirag on the same grounds.  For the reasons below, the Court will exercise jurisdiction over

Plaintiff's claims against Mahendra, **GRANT** Mahendra's motion on 12(b)(6) grounds, and **DENY** the Massachusetts Defendants' motion.[1]

## I.  BACKGROUND[2]

Plaintiff is a New Jersey resident.  Am. Compl. ¶ 1.  Jigar, to whom Plaintiff loaned money, is a Massachusetts resident.  *Id.* ¶ 3.  Ashaben and Jigar are married and reside together in Massachusetts. *Id.* ¶¶ 5-6.  Chirag is Jigar's brother[3] and lived in Massachusetts at the time of the subject events.[4] *Id.* ¶¶ 8-9.  Mahendra, Plaintiff's distant relative, is a Pennsylvania resident. *Id.* ¶ 11.

### A.  First Loan for $300,000 ("First Loan")

In the Gujarati community, it is customary to loan money within the community when a "Jamin" assures the borrower's creditworthiness. *Id.* ¶ 27.  Here, Mahendra acted in that capacity. In November 2015, Mahendra, who has known his "close friend" Jigar since 1992, introduced Jigar to Plaintiff to convince Plaintiff to loan money to Jigar. *Id.* ¶¶ 24-26.  Mahendra "would personally get involved if any dispute arose in the repayment of the loan." *Id.* ¶ 26.

In November and December 2015, Plaintiff, Jigar, and Mahendra spoke numerous times by phone to negotiate the terms of an initial $300,000 loan. *Id.* ¶ 29.  Plaintiff explained to Jigar that any loan would come from personal savings and require a customary "tako vyaj," a 12% annual interest rate common for personal loans in Gujarat, India. *Id.* ¶ 32.  Jigar agreed to pay the 12% rate, but requested that the promissory note reflect a 3% rate. *Id.* ¶ 33.

---

[1] The Court decides the motions without oral argument.  Fed. R. Civ. P. 78; L.Civ.R.78(b).
[2] This section derives primarily from the well-pled factual allegations in the Complaint, as well as the certifications attached to the motion papers.
[3] Jigar claims that Chirag is his cousin, not his brother.  For this motion's purposes, the Court accepts Plaintiff's claim that Chirag is Jigar's brother.
[4] Chirag has since moved to Tennessee.  D.E. 85-4 at 1, ¶ 2.

On January 1, 2016, Jigar traveled to Plaintiff's Secaucus, New Jersey home, where the two confirmed the loan terms and executed the promissory note (the "First Note"). *Id.* ¶¶ 34, 37; D.E. 61 at 38. Jigar assured Plaintiff that he would repay the full loan, plus 12% interest. Am. Compl. ¶ 35. Plaintiff handed Jigar a personal check for $300,000. *Id.* ¶ 38.

On December 31 of each year, beginning December 31, 2016, the First Note required five, equal annual payments composed of simple interest only. *Id.* ¶ 39. On December 31, 2020, a lump sum of the entire principal was due. *Id.* ¶ 40. In the event of default, the First Note permitted acceleration, whereby Plaintiff could demand immediate repayment of the outstanding principal and interest, including all costs and reasonable attorneys' fees required to collect and enforce the First Note. *Id.* ¶¶ 41-42.

### B. Second Loan for $50,000 ("Second Loan")

In February 2016, Jigar asked Plaintiff for an additional, $50,000 loan. *Id.* ¶ 43. Over a series of phone calls, the parties agreed that the Second Loan's terms would be identical to the First Loan's. *Id.* ¶¶ 44, 45. On February 22, 2016, Plaintiff mailed Jigar a $50,000 personal check. *Id.* ¶ 49; D.E. 61 at 48. On March 1, 2016, Plaintiff and Jigar executed another promissory note (the "Second Note"). Am. Compl. ¶ 47; D.E. 61 at 44. Chirag emailed a signed copy to Plaintiff on Jigar's behalf on March 22, 2016. Am. Compl. ¶ 48.

### C. Third Loan for $50,000 ("Third Loan")

In May 2016, Jigar asked for another $50,000 loan. *Id.* ¶ 50. Plaintiff and Jigar agreed by telephone on the same terms as the prior loans (including the 12% interest). *Id.* ¶¶ 51-53. Plaintiff sent Jigar another $50,000 personal check. *Id.* ¶ 53; D.E. 61 at 50. On June 30, 2016, Plaintiff and Jigar executed a promissory note for the Third Loan (the "Third Note"). Am. Compl. ¶ 54;

D.E. 61 at 52.  The next day, Chirag emailed a signed copy to Plaintiff on Jigar's behalf.  Am. Compl. ¶ 55.

### D.      Fourth Loan for $50,000 ("Fourth Loan")

In late July 2016, Jigar asked Plaintiff for a fourth loan of $50,000.  *Id.* ¶ 56.  The parties discussed the terms, identical to the prior loans, by phone.  *Id.* ¶ 57.  On July 31, 2016, Jigar traveled to New Jersey to meet with Plaintiff at the Secaucus Temple in Secaucus, New Jersey. *Id.* ¶ 59.  Plaintiff handed Jigar a personal check for $50,000.  *Id.* ¶ 60; D.E. 61 at 56.

### E.      Fifth Loan for $50,000 ("Fifth Loan") and the Combined Note

In December 2016, Jigar asked for a fifth and final loan of $50,000, totaling $500,000 over all of the loans.  Am. Compl. ¶ 61.  The parties agreed to the same terms as the prior loans.  *Id.* ¶¶ 62-63.  This time, however, the parties executed a promissory note that memorialized the total loan amount of $500,000 and consolidated all loan terms into a single document (the "Combined Note").  *Id.* ¶ 64.

The Combined Note required Jigar to pay annual interest on December 31 each year through the maturity date, set a maturity date of December 31, 2020 at which time Jigar would pay the entire $500,000 principal balance, and entitled Plaintiff to recover all fees and costs associated with collection.  *Id.* ¶ 65.  On December 26, 2016, Plaintiff sent Jigar another $50,000 personal check.  *Id.* ¶ 66.  In early January 2017, Jigar traveled to New Jersey to meet with Plaintiff.  *Id.* ¶ 67.  During an hours-long meeting, Jigar verbally assured Plaintiff that he had the ability to pay, including the 12% interest, and the parties executed the Combined Note.  *Id.* ¶ 69.

Jigar made the following interest payments:

| Year | Interest Due | Interest Paid |
|------|--------------|---------------|
| 2016 | $40,000 | $40,000 |
| 2017 | $60,000 | $60,000 |
| 2018 | $60,000 | $60,000 |
| 2019 | $60,000 | **$50,000** |
| 2020 | $60,000 | **None** |

*Id.* ¶ 70 (emphasis added)

Jigar's 2016 through 2018 payments represented a 12% interest rate.  *Id.* ¶ 71.  His payments were timely for 2016 and 2017, but his 2018 payment was over a month late.  *Id.* ¶ 72.  Concerned, Plaintiff traveled to Massachusetts and advised Jigar that he was in breach due to the late 2018 interest payment.  *Id.* ¶¶ 73-75.  Plaintiff warned Jigar that Plaintiff would accelerate the payments due upon a further breach.  *Id.* ¶ 76.

From October 31, 2019 through December 31, 2019, Jigar paid $50,000 in interest for 2019, $10,000 less than the amount due.  *Id.* ¶ 77.  Jigar failed to pay the outstanding interest despite Plaintiff's repeated demands.  *Id.* ¶¶ 78-80.

**F.      The Property Transfer**

On February 2, 2006, Jigar created the Jay Veer Realty Trust ("JVR Trust"), a revocable trust in which he was a trustee.  *Id.* ¶¶ 89, 93.  In May 2006, the JVR Trust acquired a commercial property located at 21 Front Street, Shirley, Massachusetts (the "Property").  *Id.* ¶ 90.  Ashaben, Jigar's wife, was added as a trustee of JVR Trust on August 10, 2019.  *Id.* ¶ 91.  Jigar and Ashaben are the sole trustees.  *Id.* ¶ 92.

On November 25, 2019, Chirag created Mahi One Realty LLC ("Mahi LLC").  *Id.* ¶ 95.  Less than a month later, on December 24, 2019, Jigar and Ashaben, through JVR Trust, sold the Property to Mahi LLC.  *Id.* ¶ 96.

G.      **Jigar's Continued Default**

Plaintiff made several more attempts to get Jigar to pay his debt.  On February 23, 2020, Plaintiff, Jigar, and Mahendra met in-person at "Jigar's primary store/business" in Massachusetts; Jigar promised Plaintiff that he would repay $200,000 by July 1, 2020, and $300,000 shortly thereafter.  *Id.* ¶ 81(a); D.E. 61 at 29, ¶ 14.  On September 20, 2020, Plaintiff, Jigar, Mahendra, Ramesh G. Patel ("Ramesh"), and Naresh P. Patel ("Naresh")[5] met in-person and Jigar promised Plaintiff a $100,000 payment within two weeks.  Am. Compl. ¶ 81(b).  Another in-person meeting took place between Jigar, Plaintiff, Mahendra, and other relatives at Jigar's store to discuss the debt.  D.E. 61 at 29, ¶ 15.

On October 14 and October 30, 2020, Jigar, Mahendra, Ramesh, and Naresh spoke with Plaintiff by phone and Jigar claimed that he would make a $300,000 payment by November 1, 2020.  Am. Compl. ¶ 81(c).

On December 20, 2020, after Jigar again failed to pay, Plaintiff served Jigar with a notice of default.  *Id.* ¶ 83; D.E. 61 at 64.  The notice demanded $570,000 by December 31, 2020, comprising the $500,000 principal, 2019 interest payment ($10,000) and 2020 interest payment ($60,000).  *Id.*  Despite the notice, and a second notice on January 1, 2021, Jigar has not made any further payments.  Am. Compl. ¶¶ 86-88.

H.      **Procedural History of This Action**

Plaintiff filed the initial complaint on February 3, 2021.  D.E. 1.  With the Court's leave, Plaintiff later filed an Amended Complaint.   D.E.s 60, 61.  The Amended Complaint alleges nine claims (the bolded claims are challenged):

1.  breach of contract against Jigar;

---

[5] Non-party Ramesh is Plaintiff's "distant relative" and Mahendra's cousin. D.E. 61 at 32, ¶2. Non-party Naresh's role and relationship to the parties is unclear from the record.

   2. **breach of contract/personal guarantee against Mahendra**;
3. unjust enrichment against Jigar;
4. fraud/intentional misrepresentation against Jigar;
5. **breach of the covenant of good faith and fair dealing against** Jigar and **Mahendra**;
6. **violation of the New Jersey Uniform Fraudulent Transfer Act ("UFTA"), N.J.S.A. 25:2-20, against** Jigar, **Ashaben, and Chirag**;
7. **aiding and abetting fraud against** Jigar, **Ashaben, and Chirag**;
8. **civil conspiracy/conspiracy to commit fraud against** Jigar, **Ashaben, and Chirag**; and
9. **promissory estoppel against Mahendra**.

Am. Compl. ¶ 13.

Mahendra now moves, pursuant to Rule 12(b)(2) and (6), to dismiss the Amended Complaint. D.E. 73 ("Mot."). Plaintiff opposes. D.E. 76 ("Opp'n"). Mahendra replies. D.E. 77 ("Mahendra Reply").

The Massachusetts Defendants likewise move, pursuant to Rule 12(b)(2) and (6), to dismiss the Amended Complaint. D.E. 85 ("Mass. Def. Mot."). Plaintiff opposes. D.E. 88 ("Pl. Mass. Opp'n"). The Massachusetts Defendants reply. D.E. 89 ("Mass. Reply").

## II.   ANALYSIS

### A.   Rule 12(b)(2), Personal Jurisdiction

Mahendra, a Pennsylvania resident, argues that this Court lacks general and specific jurisdiction over him. Mahendra Mot. The Court disagrees, will **DENY** this branch of Mahendra's motion, and will exercise specific personal jurisdiction.

The Massachusetts Defendants likewise argue that this Court lacks general and specific jurisdiction over Ashaben and Chirag.[6] The Court disagrees**, will **DENY** this branch of the motion, and will exercise specific personal jurisdiction over Ashaben and Chirag.

---

[6] The Massachusetts Defendants do not argue that this Court lacks jurisdiction over Jigar.

### 1. *General standards*

Under Rule4(e), district courts have personal jurisdiction over nonresident defendants to the extent authorized under the law of the forum state in which the district court sits. *Sunbelt Corp. v. Noble, Denton & Assocs.*, 5 F.3d 28, 31 (3d Cir. 1993). Determining personal jurisdiction requires a two-step inquiry. *IMO Indus., Inc. v. Kiekert, AG*, 155 F.3d 254, 259 (3d Cir. 1998). First, the court uses the relevant state's long-arm statute to see whether it permits the exercise of personal jurisdiction. *Id.* Second, "the court must apply the precepts of the Due Process Clause of the [federal] Constitution." *Id.*

"Here, the first step collapses into the second, because 'New Jersey's long-arm statute provides for jurisdiction coextensive with the due process requirements of the United States Constitution.'" *Murphy v. Eisai, Inc.*, 503 F. Supp. 3d 207, 221-22 (D.N.J. 2020) (quoting *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004)); N.J. Ct. R. 4:4-4(c). Accordingly, personal jurisdiction over a non-resident defendant is proper in this Court if the defendant has "certain minimum contacts with [New Jersey] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). There are two kinds of personal jurisdiction: general and specific.

### 2. *General Jurisdiction*

"For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011) (cleaned up). Plaintiff does not appear to dispute Defendants' out-of-state residences, or that Defendants have few (if any) general connections to New Jersey unrelated to the subject events. The Court agrees that general jurisdiction is inapplicable here.

### 3. This Court can exercise specific jurisdiction over Defendants

### i. Specific jurisdiction generally

To demonstrate whether a plaintiff's cause of action relates to the defendant's contact with New Jersey, courts evaluate three elements. First, the defendant must have "purposefully directed [its] activities" at the forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (cleaned up). Second, the litigation must "arise out of or relate to" at least one of those activities. *Helicopteros*, 466 U.S. at 414; *Grimes v. Vitalink Commc'ns Corp.*, 17 F.3d 1553, 1559 (3d Cir. 1994). And third, if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise "comport[s] with 'fair play and substantial justice.'" *Burger King*, 471 U.S. at 476 (quoting *Int'l Shoe Co.*, 326 U.S. at 320).

In conducting this analysis, the Court may consider matters outside of the pleadings. Once a personal jurisdiction defense has been raised, "the plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence. . . . At no point may a plaintiff rely on the bare pleadings alone . . . to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of in personam jurisdiction." *Patterson v. FBI*, 893 F.2d 595, 603-04 (3d Cir. 1990).

### ii. Defendants' activities were purposefully directed at New Jersey

At the outset, it is of no consequence that any Defendants have few (or, in Chirag's case, any) physical connections to New Jersey. "When a defendant has received the benefits and protections of the forum's laws by engaging in business activities with a forum resident, courts have 'consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.'" *Remick v. Manfredy*, 238 F.3d 248, 257 (3d Cir. 2001) (quoting *Mellon Bank (East) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1225 (3d Cir. 1992)); *see also Farino*, 960 F.2d

at 1225 (quoting *Burger King*, 471 U.S. at 476) ("While it may be true that the defendants have no physical connection with the forum, that is not dispositive.").

(a)   *Mahendra purposefully directed his activities at New Jersey*

Plaintiff argues that this Court should exercise jurisdiction over Mahendra based on his alleged guaranty of Plaintiff's loans to Jigar.   Plaintiff's sworn certification satisfies his jurisdictional burden.   D.E. 76-1 ("Pl. Certif.").   The certification testifies that Mahendra purposefully availed himself of this Court's jurisdiction through repeated phone calls with Plaintiff, ongoing participation in the relationship and transactions between Plaintiff and Jigar, and physical travel to New Jersey to discuss Plaintiff's loans.

A mere contract between a forum resident and an out-of-state party will not, by itself, automatically establish sufficient contacts with the forum to justify in personam jurisdiction. *Associated Bus. Tel. Sys. Corp. v. Danihels*, 829 F. Supp. 707, 711 (D.N.J. 1993) (citing *Burger King*, 471 U.S. at 478-79) (noting that *Burger King* contract, found insufficient to invoke personal jurisdiction, "was negotiated over a five-month period; was intended to run for twenty years; involved continuing and widespread contacts with the forum; provided that the forum's law would govern; and required some travel to and training in the forum").   Similarly, "informational communications in furtherance of that contract do not establish the purposeful activity necessary for a valid assertion of personal jurisdiction."   *Sunbelt Corp. v. Noble, Denton & Assocs.*, 5 F.3d 28, 32 (3d Cir. 1993) (citing *Stuart v. Spademan*, 772 F.2d 1185, 1193 (5th Cir. 1985) (stating that "an exchange of communications between a resident and a nonresident in developing a contract is insufficient of itself to be characterized as purposeful activity invoking the benefits and protection of the forum state's laws")).

"There are no general rules governing whether or not guarantors of contractual obligations fall within the constitutional power of the courts of a particular forum." *Farino*, 960 F.2d at 1225. However, the contacts here are sufficient to demonstrate purposeful availment.  Mahendra was alleged to be involved, in some capacity, at every phase of the individual loans from Plaintiff to Jigar, including the initial loans' solicitation, the initial and subsequent loans' terms, and enforcement. *See id.* at 1225 ("A direct solicitation by a foreign defendant of the business of a forum resident has been held to be 'purposeful availment' in cases where either a continuing relationship or some in-forum performance on the part of the plaintiff was contemplated.").  And the record suggests that Mahendra was aware of Plaintiff's residency, and thus that the effects of the loan (and nonpayment) would be felt by Plaintiff in New Jersey.

Importantly, though a guarantor's financial stake in the loan is a significant factor, a stake is not mandatory to confer jurisdiction. *Id.* at 1225 n.4 ("We find it unnecessary to decide whether such factors should control . . . .").  Simply risking one's name and financial worth, particularly coupled with concerted and ongoing involvement, may be enough. *See Granada Apartment Holdings, Ltd. Liab. Co. v. Joseph*, No. 18-16, 2019 U.S. Dist. LEXIS 26545, at *12 (W.D. Pa. Feb. 20, 2019) (citing *Nat. Can Corp. v. K Beverage Co.*, 674 F.2d 1134 (6th Cir. 1982)) (exercising jurisdiction over guarantor where personal guaranty of payment obligations served as an inducement for the loan, and was also a necessary precondition thereof); *see also Altec Cap. Servs., LLC v. Xcell Energy & Coal Co.*, LLC, No. 2:11-cv-2809, 2011 U.S. Dist. LEXIS 164701, at *21 (N.D. Ala. Dec. 21, 2011) (exercising jurisdiction over guarantor where "the circumstances indicate that the in-state plaintiff would not have extended credit to the out-of-state corporation, in whom the defendant had a substantial direct or indirect financial stake, without the individual defendant's personal guaranty" and guaranty "contemplated an ongoing relationship").

Here, Mahendra is alleged to have been involved at every phase of Plaintiff and Jigar's contractual relationship. Mahendra introduced Plaintiff to Jigar by phone in November 2015, assured Plaintiff of Jigar's creditworthiness, and promised to "personally get involved if any dispute arose." Am. Compl. ¶ 3; *see Buckhorn Energy Oaks Disposal Servs., LLC v. Clean Energy Holding Co., LLC*, No. CV 16-141, 2017 U.S. Dist. LEXIS 44417, at *14-15 (D. Mont. Mar. 24, 2017) (finding jurisdiction where defendants "each assured payment and agreed to personally guaranty a debt for services performed entirely, repeatedly, and over a prolonged period of time in Montana," negotiated for several months to establish their business relationship at the Montana landfill "going forward," and provided assurance and personal guaranty "as an inducement to permit the continued disposal of radioactive waste in the state of Montana")

When Jigar came to Plaintiff's Secaucus home on January 1, 2016, to sign the First Note and accept the first check for $300,000, Mahendra was on the phone. Am. Compl. ¶¶ 6, 7. Mahendra was on the February and May 2016 calls to discuss Plaintiff's Second and Third Loans to Jigar. *Id.* ¶¶ 8, 9. In September 2016, Plaintiff and Jigar picked up Mahendra from his Pennsylvania home and drove to Atlantic City, New Jersey, where they "discussed the outstanding loan amounts." *Id.* ¶ 10.[7] Plaintiff also testifies that he and Mahendra traveled to see Jigar at Jigar's Massachusetts store in February and September of 2020 to discuss the loans. *Id.* ¶¶ 14, 15. Mahendra was also involved in October 2020 phone calls about the loans. *Id.* ¶ 16.

Based on these interactions, the Court is satisfied that Mahendra's activities were purposefully directed at New Jersey.

---

[7] Mahendra, in his own certification, admits that this trip occurred. D.E. 76-1 ("Mahendra Certif."). Mahendra argues, however, that the trip was to the Borgata Hotel and Casino for the "sole purpose" of gambling with "nothing to do with Plaintiff's present claims." This is not a denial that the parties discussed the outstanding loans and, in any event, is an issue of fact.

      (b)     *The allegedly fraudulent transfer between entities related to Ashaben and Chirag was also purposefully directed at New Jersey*

Plaintiff argues that Ashaben and Chirag are subject to this Court's jurisdiction based solely on the commercial property transfer from the JVR Trust (Ashaben and Jigar) to Mahi LLC (Chirag) with knowledge of Jigar's debt to Plaintiff.  *See* Pl. Mass. Opp'n at 13.  The Massachusetts Defendants respond that they have minimal New Jersey contacts, and that the JVR Trust and Mahi LLC are independent, non-New Jersey entities distinct from their members.  Mass. Reply at 3-4.

However, an intentional tort, like fraudulent transfer, directed at, and having sufficient impact upon, a forum's plaintiff may enhance otherwise insufficient contacts with that forum. *IMO Indus.*, 155 F.3d at 260 (citing *Calder v. Jones*, 465 U.S. 783 (1984)).  The *Calder* effects test requires a plaintiff to show that (1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; and (3) the defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity.  *Id.* at 265-66.

Those requirements are satisfied.  First, the Third Circuit has classified "fraudulent conveyance" as "a species of the tort of intentional fraud[.]"  *Gambone v. Lite Rock Drywall*, 288 F. App'x 9, 14 (3d Cir. 2008).  And transfer for the purposes of evading judgment can satisfy the remaining requirements—the focal point is New Jersey.  *See State Farm Mut. Auto. Ins. Co. v. Tz'doko V'CHESED of Klausenberg*, 543 F. Supp. 2d 424, 431 (E.D. Pa. 2008) (asserting jurisdiction over nonresident defendants who were alleged to be fraudulent transferees of judgment debtor, because effect of alleged fraudulent conveyance was to interfere with enforcement of a judgment in the forum state); *Kremen v. Cohen*, No. 5:11-cv-05411, 2012 U.S. Dist. LEXIS 1988,

at *23 (N.D. Cal. Jan. 7, 2012) (finding that allegation of fraudulent transfer satisfied the "effects test" because defendants knew transfer would be felt by the plaintiff in the forum state).

The Massachusetts Defendants argue that this Court cannot exercise jurisdiction over them because the JVR Trust and Mahi LLC are independent legal entities distinct from their members. Mass. Reply at 3-4.  However, the veil-piercing standard is "less onerous" for the purposes of jurisdictional analysis. *Sugartown Worldwide LLC v. Shanks*, 129 F. Supp. 3d 201, 205-06 (E.D. Pa. 2015) (finding personal jurisdiction over individual despite finding that individual's personal benefit from fraud was not adequately pled).  "[I]n deciding whether to pierce the corporate veil so as to assert personal jurisdiction over a corporate officer or director, the court should only look to the question of whether the corporation was a shell for the person; it does not require then that the shell be known to have been involved in fraud." *Cabell Fin. Corp. v. Gurr*, No. 12-473, 2012 U.S. Dist. LEXIS 178082, at *2 (N.D. Ohio Nov. 27, 2012) (citing *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981)); *Sugartown*, 129 F. Supp. 3d 201, 205-06 (finding personal jurisdiction over individual based on individual's knowledge that corporation may have served as a shell).  Numerous courts have found personal jurisdiction over fraudulent transfer claims against corporate officers and shareholders alleged to be the alter-egos of their corporations. *Brocious Trucking, Inc. v. BFL, Inc.*, No. 09-741, 2010 U.S. Dist. LEXIS 11970, at *12 (W.D. Pa. Feb. 11, 2010) (collecting cases).[8]

Here, Plaintiff has adequately alleged, for jurisdictional purposes, that Ashaben and Chirag both knew about Plaintiff's loans to Jigar before the property transfer between the JVR Trust and Mahi LLC.  Chirag emailed signed copies of the Second and Third Notes to Plaintiff.  Am. Compl.

---

[8] To the extent that Fed. R. Civ. P. directs the court, even as late as trial, to "freely permit an amendment when doing so will aid in presenting the merits . . .," the Court will permit Plaintiff an opportunity to amend, within 30 days, to add the corporations.

¶¶ 8, 48, 55.  Ashaben traveled to New Jersey on several occasions to make payments to Plaintiff on Jigar's behalf.  *See* D.E. 88-1 (Jigar Dep. Tr.) at 12 (testifying that Plaintiff has picked up payments from Ashaben's uncle's house in New Jersey when Ashaben would visit).  And finally, the transfer occurred in late 2019, near the time of Jigar's inadequate December 2019 interest payment.

### iii.   The litigation arises out of Defendants' contacts with New Jersey

Mahendra and the Massachusetts Defendants argue, in substance, that this litigation cannot arise out of any New Jersey contacts because there are no (or minimal) such contacts.  *See* Mahendra Mot. at 5-6; Mass. Def. Mot. at 16-17.  For the reasons above, the Court is unpersuaded by these arguments.  In Mahendra's case, Plaintiff alleges Mahendra's ongoing involvement in the loan discussions between Jigar and Plaintiff, known to Mahendra to be a New Jersey resident, and a visit to New Jersey to discuss the loans.  As for the Massachusetts Defendants, as discussed above, Plaintiff's claims against them relate entirely to the allegedly fraudulent transfer meant to evade a potential judgment here.  See *AutoOpt Networks, Inc. v. GTL USA, Inc.*, Civil Action No. 3:14-CV-1252-D, 2015 U.S. Dist. LEXIS 11306, at *17 (N.D. Tex. Jan. 30, 2015) (facts underlying fraudulent transfer, if true, "are sufficient to show that [defendant], having benefited from the receipt of funds from its Texas-based subsidiary and actively directed and assisted that subsidiary in avoiding the payment of debts owed to its creditors, can reasonably expect to be haled into a Texas court to account for its actions").

### iv.   Defendants have not demonstrated that the exercise of jurisdiction would be unreasonable

Once a court finds that personal jurisdiction is proper, "the defendant must present a 'compelling case' that the exercise of jurisdiction would be unreasonable.  *Norben Imp. Corp. v. Metro. Plant & Flower Corp.*, No. 05-54, 2005 U.S. Dist. LEXIS 34386, at

*25-26 (D.N.J. July 15, 2005) (citing *Grand Ent. Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 483 (3d Cir. 1993)).   The Court must consider the following factors: the burden on the defendant; the interests of the forum state; the plaintiff's interest in obtaining relief; the judicial system's interest in judicial efficiency; and the shared interests of the several states in furthering fundamental substantive social policies.  *Id.*

The Court agrees with Plaintiff that New Jersey has a strong interest in efficiently resolving disputes between New Jersey residents and out-of-state defendants, including the enforcement of any available remedies.  *See* Pl. Mahendra Opp'n at 11; Pl. Mass. Opp'n at 18.   Defendants' primary argument is that litigating the matter here would be burdensome because of the travel required.   However, "this burden alone does not render the exercise of personal jurisdiction unreasonable."  *Kravitz v. Binda*, No. 17-CV-07461, 2020 U.S. Dist. LEXIS 10893, at *26-27 (S.D.N.Y. Jan. 21, 2020) (citing *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 172 (2d Cir. 2010)); *see Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 244 (2d Cir. 1999) (holding that burden on Japanese defendant was insufficient to overcome finding of due process, particularly because "the conveniences of modern communication and transportation ease what would have been a serious burden only a few decades ago").

Accordingly, Plaintiff has met his burden to demonstrate that this Court can exercise personal jurisdiction over Defendants.  Thus, the Court will **DENY** the branches of Defendants' motions seeking to dismiss the Amended Complaint for lack of personal jurisdiction.

### B.        Rule 12(b)(6), Failure to State a Claim

Mahendra moves to dismiss Plaintiff's claims for breach of contract/personal guaranty (Count 2), breach of the covenant of good faith and fair dealing (Count 5), and promissory estoppel

(Count 9) for failure to state a claim.  Mahendra Mot. at 6-10.  For the reasons below, the Court will **GRANT** the motion and dismiss all claims against Mahendra.

The Massachusetts Defendants move to dismiss Plaintiff's claims for violation of the Uniform Fraudulent Transfers Act (Count 6), aiding and abetting (Count 7), and civil conspiracy (Count 8) for failure to state a claim.  Mass. Defs. Mot. at 5-11.  For the reasons below, the Court will **DENY** dismissal of those claims.

### 1.   Legal Standard

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a court accepts all well-pled facts as true, construes the complaint in the plaintiff's favor, and determines "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (cleaned up).  "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."  *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

To survive a Rule 12(b)(6) challenge, the plaintiff's claims must be facially plausible, meaning that the well-pled facts "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).  The allegations must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  "[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  *Ashcroft*, 556 U.S. at 679.  Finally, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Id.*

2.   *The Statute of Frauds bars Plaintiff's breach of contract claim against Mahendra*

Mahendra argues that Plaintiff's claim for breach of contract/personal guaranty is barred by the Statute of Frauds because the alleged guaranty was an "oral promise" and not in writing. *See* Mahendra Mot. at 6-7.  New Jersey's Statute of Frauds provides that "[a] promise to be liable for the obligation of another person, in order to be enforceable, shall be in a writing signed by the person assuming the liability or by that person's agent.  The consideration for the promise need not be stated in the writing."  N.J. Stat. § 25:1-15.

Plaintiff focuses only on the consideration aspect of the Statute, arguing that "Mahendra's promises to guarantee Jigar's loans were made simultaneous with the loan agreements."  Pl. Mahendra Opp'n at 12-13.  Indeed, Plaintiff is correct that "[i]f a guarantee is not executed at the same time or as part of the same agreement as a loan, it must be supported by separate consideration moving to the guarantor or the renunciation of something substantial by the guarantee."  *M. Spiegel & Sons Oil Corp. v. Amiel*, 2016 N.J. Super. Unpub. LEXIS 1386, at *6 (Sup. Ct. 2016).  In other words, *all* guarantees must be supported by consideration, but guarantees executed after an agreement must be separated by *separate* consideration.

But Plaintiff puts the cart (consideration) before the horse (a writing); consideration is irrelevant without a writing.  It is undisputed that there is no written guaranty.  The only memorialization of Mahendra's role is Mahendra's April 18, 2021 affidavit, attached to the Amended Complaint.  D.E. 61 at 27.  At most, it references Mahendra's role in assuring Jigar's creditworthiness and Mahendra's role to "ensure the loan is repaid."  *Id.* ¶¶ 4-5.

But even if the affidavit (or some other document) could constitute a writing, consideration accompanying it must generally be "immediate, personal, pecuniary and direct."  *Martin Roofing, Inc. v. Goldstein*, 60 N.Y.2d 262, 269 (1983).  "Not every benefit is consideration."  *Neuhoff v.*

*Marvin Lumber & Cedar Co.*, 370 F.3d 197, 202-03 (1st Cir. 2004) (citing 2 A. Corbin, Corbin on Contracts § 5.9 (J.M. Perillo & H.H. Bender eds., rev. ed. 1995) (stating that the joy a grandfather receives in promising to give a child money each week is not consideration for the promise to give him money)); *see Neuhoff v. Marvin Lumber & Cedar Co.*, 370 F.3d 197, 202-03 (1st Cir. 2004) (a "hypothetical and tangential" benefit to defendant's reputation via agreement to replace windows was not consideration).

Recognizing this deficiency, Plaintiff seeks, in the alternative, to pursue discovery on the issue of consideration. But consideration is irrelevant if there is no writing. Nor does Plaintiff identify, despite already having amended the complaint, what discovery might uncover in the way of a writing, or sufficient consideration. Thus, the Court will **GRANT** Mahendra's motion to dismiss Plaintiff's breach of contract claim. Because amendment would be futile, this dismissal will be **with prejudice**.

### 3. *Plaintiff fails to state a claim against Mahendra for breach of the covenant of good faith and fair dealing*

A party to a contract breaches the covenant of good faith and fair dealing if it acts in bad faith or engages in some other form of inequitable conduct in the performance of a contractual obligation. *Black Horse Lane Assocs., Ltd. P'ship v. Dow Chem. Corp.*, 228 F.3d 275, 288 (3d Cir. 2000). A "malice-like" element is required to prove a breach. *Emerson Radio Corp. v. Orion Sales, Inc.*, 80 F. Supp. 2d 307, 311 (D.N.J. 2000). Here, Plaintiff has alleged, at most, that Mahendra "ignor[ed] his financial responsibility," based on the alleged personal guaranty, to cover Jigar's debt when Jigar defaulted. Pl. Mahendra Opp'n at 15.

This is insufficient to plead a breach of the covenant of good faith and fair dealing. Accordingly, the Court will **DISMISS** Plaintiff's Count 5 as against Mahendra. Because amendment would be futile, this amendment will be **with prejudice**.

19

    *4.   Plaintiff fails to state a claim against Mahendra for promissory estoppel*

Mahendra argues that Plaintiff has failed to state a claim for promissory estoppel because an implied undertaking to lend an unspecified amount of money cannot be the kind of "clear and definite promise" required for a promissory estoppel claim.  Mahendra Mot. at 9 (citing *Malaker Corp. Stockholders Protective Comm. v. First Jersey Nat. Bank*, 163 N.J. Super. 463, 479 (App. Div. 1978)).  Because Plaintiff does not oppose this argument, the Court deems it conceded, and the claim will be dismissed.  *Behrens v. Amazon.com, Inc.*, No. 22-01475, 2023 U.S. Dist. LEXIS 163610, at *5-6 (D.N.J. Sep. 14, 2023).  That dismissal will also be **with prejudice.**

    *5.   Plaintiff states a claim against Ashaben and Chirag based on their participation in an allegedly fraudulent transfer*

The Massachusetts Defendants argue that Plaintiff's UFTA claims against Mahendra and Chirag fall short of Rule 9(b)'s heightened pleading standard.  Rule 9(b), which applies to fraudulent transfer claims, requires a fraud plaintiff to "state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which [it is] charged."  *Lum v. Bank of America*, 361 F.3d 217, 223-24 (3d Cir. 2004) (cleaned up).

The UFTA provides, among other things, that

> [a] transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

N.J.S.A. 25:2-27(a).

The Massachusetts Defendants primarily argue that the transfer had nothing to do with Jigar, who would qualify as the debtor under these facts.  Rather, the allegedly fraudulent transfer

of property was between the JVR Trust and Mahi LLC, not Mahendra and Chirag (or Jigar) individually. *See* Mass. Defs. Mot. at 8. The Massachusetts Defendants also argue that the property was sold for $800,000, demonstrating that the transaction was a reasonable, arms-length transaction for value. *Id.* at 9.

However, the gravamen of Plaintiff's claims against Ashaben and Chirag is a veil-piercing theory: they should be held individually liable for the alleged purpose of the property transfer between the JVR Trust and Mahi LLC. By piercing the corporate veil, a court "may impose liability on an individual or entity normally subject to the limited liability protections of the corporate form." *The Mall at IV Group Props., LLC v. Roberts*, No. 02-4692, 2005 U.S. Dist. LEXIS 31860, 2005 WL 3338369, at *3 (D.N.J. Dec. 8, 2005). The doctrine is meant "to prevent an independent corporation from being used to defeat the ends of justice, to perpetuate fraud, to accomplish a crime, or otherwise to evade the law." *State v. Ventron Corp.*, 94 N.J. 473, 500 (1983); *see also Cevdet Aksut Ve Ogullari Koll. Sti v. Cavusoglu*, No. 12-2899, 2015 U.S. Dist. LEXIS 91045, (D.N.J. July 14, 2015) (plaintiff named only the sole director and shareholder of a dissolved corporation in a suit to pierce the corporate veil and hold individual liable for judgment obtained against the dissolved corporation).

At this juncture, Plaintiff's allegations are sufficient. Plaintiff has alleged that Ashaben (Jigar's wife) and Chirag (Jigar's brother), each with personal knowledge of Jigar's debt to Plaintiff, participated in a property sale designed to protect Jigar's assets from judgment. Plaintiff alleges that Ashaben was added to the JVR Trust, and that Chirag created Mahi LLC, in late 2019, shortly before the property transfer and near the time when Jigar stopped paying on the loans. *See* Am. Compl. ¶¶ 89-103. Whether the JVR Trust and/or Ashaben received a "reasonably equivalent value" for the property is an issue of fact that cannot be determined on a Rule 12(b)(6) motion.

21

*Sikirica v. US Foods, Inc. (In re Damon's Int'l, Inc.)*, 500 B.R. 729, 738 (Bankr. W.D. Pa. 2013). Accordingly, the branch of Massachusetts Defendants' motion seeking to dismiss Plaintiff's UFTA claim will be **DENIED**.

> 6. *Plaintiff's aiding and abetting and civil conspiracy claims plausibly state a claim for relief*

The elements of aiding and abetting fraud are: (1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; and (3) the defendant must knowingly and substantially assist the principal violation. *Jasper v. Bank of Am. Corp.*, No. 20-2842, 2021 U.S. Dist. LEXIS 149321, at *14 (D.N.J. Aug. 5, 2021).

A civil conspiracy is "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage." *Morgan v. Union County Bd. of Chosen Freeholders*, 268 N.J. Super. 337, 364 (App. Div. 1993), *certif. denied,* 135 N.J. 468 (1994) (quoting *Rotermund v. U.S. Steel Corp.*, 474 F.2d 1139, 1145 (8th Cir. 1973) (internal quotations omitted)). "It is enough [for liability] if you understand the general objectives of the scheme, accept them, and agree, either explicitly or implicitly, to do your part to further them." *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988).

For the same reasons stated above in the Court's discussion of Plaintiff's UFTA claims, Plaintiff's aiding and abetting and civil conspiracy claims also survive. *See Delzotti v. Morris*, No. 14-7223, 2015 U.S. Dist. LEXIS 120286, at *24-25 (D.N.J. Sep. 9, 2015) (finding that plaintiff stated an aiding and abetting claim based on a fraudulent conveyance theory); *Banco Popular N. Am. v. Gandi*, 184 N.J. 161, 177-78 (2005) ("[A] creditor in New Jersey may bring a claim against

one who assists another in executing a fraudulent transfer. Such an action would require the creditor to prove that the conspirator agreed to perform the fraudulent transfer, which, absent the conspiracy, would give a right of action under the UFTA.").  Accordingly, the branches of the Massachusetts Defendants' motion seeking to dismiss Plaintiff's aiding and abetting and civil conspiracy claims will be **DENIED**.

## III.    CONCLUSION

For the reasons above, the Court will **GRANT** Mahendra's motion to dismiss (D.E. 73); Plaintiff's breach of contract (Count 2), covenant of good faith and fair dealing (Count 5, as against Mahendra) and promissory estoppel (Count 9) claims will be **DISMISSED with prejudice**.  The Court will **DENY** the entirety of the Massachusetts Defendants' motion to dismiss.  D.E. 85.  The Court will also permit Plaintiff 30 days to amend the Complaint to reflect this Opinion and add the corporations involved in the allegedly fraudulent transfer.  An appropriate order accompanies this Opinion.

December 27, 2023

Evelyn Padin, U.S.D.J.

23