**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| RASHMIN M. PATEL,<br>Plaintiff,<br>v.<br>JIGAR P. PATEL, *et al.*,<br>Defendants. | No. 21cv1811 (EP) (SDA)<br>**MEMORANDUM ORDER** |

**PADIN, District Judge.**

Plaintiff Rashmin Patel loaned Defendant Jigar Patel $500,000. Plaintiff alleges that Jigar failed to repay the principal and agreed-upon interest and later acted with his wife, Defendant Ashaben Patel, and his relative, Defendant Chirag Patel, to place commercial property beyond Plaintiff's reach.[1] That commercial property was owned by Jay Veer Realty Trust—which Ashaben and Jigar allegedly controlled—and was then transferred to Mahi One Realty LLC, an entity Chirag allegedly formed shortly before the conveyance.

Defendants initially appeared, litigated the action, and even filed responsive pleadings. But after their counsel withdrew in June 2024, they repeatedly failed to comply with discovery obligations and Court orders. The Court ultimately struck Defendants' Answers with prejudice and directed the Clerk of Court to enter default. Plaintiff then moved for default judgment.[2] Only then did Chirag reappear through new counsel and seek to vacate the default entered against him.[3]

---

[1] D.E. 61 ("Amended Complaint" or "Am. Compl.").

[2] D.E. 134 ("Default Judgment Motion" or "DJ Mot.").

[3] D.E. 142 ("Motion to Vacate" or "Vacate Mot."). The Court refers to the Motion to Vacate and the Default Judgment Motion collectively as the "Motions." Plaintiff opposes the Motion to Vacate, D.E. 145 ("Vacate Opposition" or "Vacate Opp'n"), and Chirag has replied, D.E. 147 ("Vacate Reply").

The Court now resolves both Motions: Plaintiff's Default Judgment Motion against Jigar, Ashaben, and Chirag, as well as Chirag's Motion to Vacate the Clerk's entry of default against him. The Court decides the Motions without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b).

For the reasons set forth below, the Court will **DENY** Chirag's Motion to Vacate; **GRANT** the Default Judgment Motion as to liability on Counts I, VI, and VIII; **DENY** the Default Judgment Motion on Counts III, IV, V, and VII; **DENY** Plaintiff's request for punitive damages; and **DENY** Plaintiff's request for compound interest. The Court will also **GRANT** Plaintiff's request for reasonable attorney's fees and court costs against Jigar under the Combined Note as to entitlement; **RESERVE** the amount of that contractual award and any remaining fee or cost request against Ashaben or Chirag; and **AWARD** Plaintiff $2,478.55 against Jigar for fees and costs arising from his failure to appear for the November 14, 2024 deposition. The remaining monetary relief is reserved pending the new motion described below.

# I. BACKGROUND

## A. Factual Background

Plaintiff's claims arise from two related sets of allegations: (1) Plaintiff's claims concerning the $500,000 he loaned Jigar and Jigar's alleged failure to repay the principal and agreed-upon interest; and (2) Plaintiff's fraud- and transfer-related claims alleging that Jigar later acted with Ashaben and Chirag to place commercial property beyond Plaintiff's reach. The Court addresses each set in turn.

### *1. Loan-based claims*

This action arises principally from five loans Plaintiff made to Jigar in 2016. Am. Compl. ¶ 22. Plaintiff alleges that Jigar agreed to repay those loans, the parties later memorialized the

indebtedness, and Jigar failed to repay the amounts due. *Id.* ¶¶ 33–40, 44–65, 69, 77–88 & Ex. 12 (the "Combined Note").

a. Loan terms

Plaintiff alleges he is not in the business of loaning money. *Id.* ¶ 30. In late 2015, Mahendra C. Patel, a distant relative of Plaintiff and longtime friend of Jigar, introduced the two and vouched for Jigar's creditworthiness. *Id.* ¶¶ 23–29. Plaintiff advised Jigar that any loan would come from Plaintiff's and his family's personal savings and would require annual interest of twelve percent—a rate Plaintiff describes as "tako vyaj" within the Gujarati community. *Id.* ¶¶ 31–32. According to Plaintiff, Jigar agreed to pay twelve percent interest but asked that the written promissory notes identify the rate as three percent. *Id.* ¶¶ 33–36. Mahendra likewise swore that, before the first loan, he told Jigar the funds would require the traditional twelve-percent "tako vyaj" rate and Jigar agreed to pay it. *Id.* Ex. 1 ("Mahendra Aff.") ¶ 6.

Between January and December 2016, Plaintiff advanced Jigar $500,000 through five loans: an initial $300,000 loan and four later loans of $50,000 each. *Id.* ¶¶ 22–69. The parties executed promissory notes for the first three loans. *Id.* ¶¶ 37, 47, 54. Chirag allegedly emailed Plaintiff signed copies of the second and third notes on Jigar's behalf. *Id.* ¶¶ 48, 55. On January 4, 2017, after Plaintiff advanced the final $50,000, Plaintiff and Jigar executed a consolidated note memorializing the full $500,000 principal balance. *Id.* ¶¶ 61–69 & Combined Note.

The written notes provide for annual interest-only payments and a final balloon payment of the principal on December 31, 2020. *See, e.g.*, *id.* Exs. 4, 6, 9 & Combined Note. They identify the annual interest rate as three percent and describe the scheduled payments as "simple interest only." *Id.* The Combined Note also permits acceleration following an uncured default, provides that past-due installments and charges will bear interest after maturity at the maximum lawful rate, and requires Jigar to pay reasonable attorney's fees and court costs incurred in collection or

enforcement. *See* Combined Note. Plaintiff nevertheless alleges that the actual agreement required twelve percent annual interest and that the parties' performance confirms that oral term. Am. Compl. ¶¶ 31–35, 45, 52, 57, 62, 70–71; Mahendra Aff. ¶ 6.

Jigar paid Plaintiff a total of $210,000 from 2016 through 2019: $40,000 for 2016; $60,000 for 2017; $60,000 for 2018; and $50,000 for 2019. Am. Compl. ¶ 70. Plaintiff characterizes those payments as interest rather than principal, and alleges that the payments made from 2016 through 2018 reflected the parties' asserted twelve-percent annual rate. *Id.* ¶¶ 70–72. Mahendra further swore that, at meetings in February and September 2020 attended by Jigar and Plaintiff, the participants discussed and agreed that the $210,000 represented twelve-percent interest and that no principal had been repaid. Mahendra Aff. ¶¶ 14–15. Naresh Patel, Jigar's first cousin who also attended the September meeting, gives the same account of what was discussed. Am. Compl., Ex. 21 ("Naresh Aff.") ¶ 10.

Plaintiff's own Default Judgment exhibits include Jigar's written discovery responses and deposition transcript, which contain contrary evidence. Jigar's interrogatory response denies that he agreed to twelve-percent interest, D.E. 134-3 at 49, and his supplemental response characterizes the $210,000 as payments toward principal, *id.* at 55. At his deposition, Jigar acknowledged discussions of twelve-percent interest but testified that the parties signed for three percent and that three percent was what they agreed to; he later described the $60,000 payments as going toward the full loan repayment, whether interest or principal, and stated that Plaintiff asked him during 2016 to pay $5,000 per month toward principal and interest. *Id.* at 99–100, 119.

b. <u>Payment of loans</u>

The parties' relationship began to deteriorate in 2018. Jigar made that year's payment approximately six weeks late, prompting Plaintiff to warn that continued nonpayment could accelerate the debt. Am. Compl. ¶¶ 73–76. By the end of 2019, Jigar had paid $50,000 of the

$60,000 Plaintiff says was due as interest for that year under the twelve-percent rate. *Id.* ¶¶ 77–80. Between February and October 2020, Jigar allegedly repeatedly promised to make substantial principal payments—first $200,000, then $100,000, and later $300,000—but ultimately paid nothing further. *Id.* ¶¶ 81–82.

Plaintiff served notices of default on December 20, 2020, and January 1, 2021, demanding $570,000: $500,000 in principal, $10,000 in unpaid 2019 interest, and $60,000 in 2020 interest. *Id.* ¶¶ 83–88 & Exs. 13–14. Jigar made no payment in response. *Id.* ¶¶ 86–88.

Plaintiff further alleges that Jigar's conduct followed a preexisting pattern. Since 2010, Jigar has, on multiple occasions, obtained large loans from other members of the Gujarati community by promising twelve percent interest, made interest-only payments for several years, and then ceased payment without repaying the principal. *Id.* ¶¶ 98–103. Plaintiff relies on that alleged pattern to support his claim that Jigar never intended to repay the loans in full. *Id.*; *see also id.*, Count IV ¶¶ 8–16. The Naresh Patel affidavit attached to the Amended Complaint is narrower: it states that other community members approached Naresh after Jigar failed to repay "loans of this nature," but it does not identify the dates, amounts, terms, or payment histories of those other loans. Naresh Aff. ¶ 2.

Based on the above conduct, the Amended Complaint asserts four claims against Jigar arising from the loans: breach of contract (Count I), unjust enrichment (Count III), fraud or intentional misrepresentation (Count IV), and breach of the implied covenant of good faith and fair dealing (Count V). *Id.* at 15–20.

*2. Fraud- and transfer-based claims*

The remaining claims in the Amended Complaint concern a commercial property located at 21 Front Street in Shirley, Massachusetts (the "Property"). Jigar created the Jay Veer Realty Trust ("JVR Trust") in February 2006, and the JVR Trust acquired the Property that May.

Am. Compl. ¶¶ 89–90 & Exs. 15–16. Plaintiff alleges that Jigar and Ashaben were JVR Trust's sole trustees, that JVR Trust was revocable, and that they retained control over its property. *Id.* ¶¶ 92–93. The JVR Trust instrument states that its property is held for the sole benefit of the persons identified as beneficiaries, Am. Compl. Ex. 15, and Jigar's discovery responses—submitted with Plaintiff's Default Judgment Motion—identify Jigar and Ashaben as JVR Trust's sole trustees and beneficiaries after Ashaben replaced Jigar's father in 2009. D.E. 134-3 at 50, 56. Plaintiff also alleges that public records reflected more than $180,000 in liens and judgments against Jigar. Am. Compl. ¶ 97 & Ex. 20.

On November 25, 2019, Chirag organized Mahi One Realty LLC ("Mahi"). Am. Compl. ¶ 95 & Ex. 18. On December 24, 2019, Jigar and Ashaben, acting as trustees of JVR Trust, conveyed the Property to Mahi by quitclaim deed for stated consideration of $800,000. *Id.* ¶ 96 & Ex. 19. Plaintiff alleges that Chirag formed Mahi, and that all three Defendants completed the transfer, to place the Property beyond Plaintiff's reach as Jigar's payment problems worsened. *Id.* ¶¶ 94–96; *id.*, Count VI ¶¶ 24–32. Mahi, the grantee of record, is managed by Chirag, but is not a party to this action. *See id.* Ex. 18. JVR Trust is likewise not a named party.

Chirag offers a different account of the transaction. He certifies that he entered into a purchase and sale agreement with Jigar on May 23, 2019; bought the Property in good faith for investment purposes; and created Mahi to hold the commercial property and limit personal liability. D.E. 142-2 ("Chirag Certification" or "Chirag Cert.") ¶¶ 2–5. He also states that Mahi obtained $640,000 in secured financing from Rockland Trust. Chirag Cert. ¶ 6; D.E. 142-5. The transaction's settlement statement identifies Mahi as borrower, an $800,000 contract sales price, a $640,000 new loan, and a $160,000 deposit. D.E. 142-6 at 1–3. Chirag further certifies that Jigar did not remain in possession as landlord, that the conveyance was publicly recorded, that Jigar owned a separate residence in Massachusetts, and that Jigar was not insolvent at the time of sale.

Chirag Cert. ¶¶ 9–13. In support, Chirag attaches a 2015 deed reflecting Jigar's ownership of a separate residential property in Sudbury, Massachusetts, and the 2019 deed conveying the Property to Mahi. D.Es. 147-2, -3 (the "Reply Deeds").

Chirag also submits an appraisal of the Property, valuing the 21 Front Street real estate at $800,000 as of October 23, 2019. D.E. 142-4 (the "Appraisal") at 2. The Appraisal states, however, that the Property was under agreement for $800,000 "for the real estate" plus "additional consideration of $400,000 for the business operation." *Id.* at 2, 23. It also states that, at the time of the Appraisal, JVR Trust leased the Property to Shree Bhagvati Inc. under a lease running through December 2024. *Id.* at 2. Jigar acted as trustee of JVR Trust and as president of Shree Bhagvati Inc., thus controlling both the owner and the operating tenant before the conveyance. *Id.* Plaintiff therefore disputes that Chirag has accounted for the full transaction or shown that the transferor received reasonably equivalent value. Vacate Opp'n at 26–29. Plaintiff also points to Chirag's earlier transmission of two loan documents, the family relationship, and the timing of Mahi's formation and the conveyance. *Id.* at 20–29; Am. Compl. ¶¶ 48, 55. Plaintiff's own Default Judgment exhibits further show that, by the end of 2019, Jigar told Plaintiff he could not make additional payments because he was not making enough money and his businesses were not doing well. D.E. 134-3 at 121. The Plaintiff-side record reviewed by the Court does not substantiate the Vacate Opposition's separate references to repeated bankruptcy threats.

The Amended Complaint brings claims against Jigar, Ashaben, and Chirag under the New Jersey Uniform Fraudulent Transfer Act ("UFTA"), N.J. Stat. Ann. §§ 25:2-20 to -34 (Count VI), for aiding and abetting fraud (Count VII), and for civil conspiracy (Count VIII). Am. Compl., Count VI ¶¶ 23–32; *id.*, Count VII ¶¶ 33–39; *id.*, Count VIII ¶¶ 40–46. Counts II and IX—which were asserted only against Mahendra—have been dismissed. D.E. 93 ("MTD Opinion" or "MTD Op."). On Count VI, Plaintiff seeks avoidance of the conveyance to the extent necessary to satisfy

his claim and an injunction against further disposition of the Property. Am. Compl., Count VI ¶ 32. Counts VII and VIII seek damages of $570,000 plus interest, or the value of the Property if lower. *Id.*, Count VII ¶ 39; *id.*, Count VIII ¶ 46.

### B. Procedural Background

Plaintiff filed the original Complaint on February 3, 2021, and Jigar answered the following month. D.Es. 1, 4. After obtaining leave to amend, Plaintiff filed the Amended Complaint on March 13, 2023, adding Mahendra, Ashaben, and Chirag. Am. Compl. Ashaben and Chirag were personally served on March 22, 2023. D.Es. 68–69. The Court later dismissed the claims against Mahendra but denied Ashaben's and Chirag's motions to dismiss. MTD Op. Jigar answered the Amended Complaint, D.E. 75, and Ashaben and Chirag filed a joint Answer, D.E. 100.

The case thereafter stalled because Defendants stopped participating in discovery. On June 26, 2024, Judge André M. Espinosa, U.S.M.J., granted defense counsel's consented motion to withdraw. D.E. 113. That order advised Defendants that, unless they retained replacement counsel by July 26, 2024, they would proceed *pro se* and would remain obligated to comply with the Federal Rules, the Local Rules, and Court orders. *Id.* Defendants did not retain replacement counsel by that deadline.

At a September 2024 status conference, Judge Stacey D. Adams, U.S.M.J.—then recently assigned to this action—again explained that Defendants were proceeding *pro se*. The resulting order required Ashaben and Chirag to respond to all outstanding discovery by October 4, 2024, required depositions to be completed by November 30, 2024, and required fact discovery to be completed by December 16, 2024. D.E. 116 (the "Discovery Order"). The Discovery Order also permitted Defendants to retain counsel later only if doing so would not delay the proceedings or prejudice Plaintiff. *Id.* Defendants did not complete any of the ordered discovery, cooperate in scheduling depositions, or seek relief from the deadlines.

Plaintiff then sought leave to move to strike the Answers. D.E. 118. The Court directed Defendants to explain their noncompliance, but they did not respond. D.E. 119. At a January 7, 2025 status conference—which all remaining parties attended—Judge Adams again addressed Defendants' continuing failure to provide discovery and warned that Plaintiff would move to strike their Answers. D.E. 121. Plaintiff filed that motion on January 10, 2025. D.E. 122. No Defendant opposed it.

The Court nevertheless afforded Defendants another opportunity. On May 19, 2025, Judge Adams recommended striking the Answers *without prejudice* and gave Defendants until June 18, 2025, to provide all outstanding discovery and confirm deposition dates. D.E. 124 (the "First R&R") at 5–6. The First R&R warned that, if Defendants did not cure their violations, Plaintiff could renew his request to strike the Answers with prejudice and seek default. *Id.* at 6. Defendants again did nothing.

On August 12, 2025, Judge Adams issued a second Report and Recommendation. D.E. 127 (the "Second R&R"). Applying the six factors set forth in *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 868 (3d Cir. 1984), she found that Defendants were personally responsible for their noncompliance; that their conduct prejudiced Plaintiff by preventing him from obtaining discovery needed to prosecute the action; that they had established a history of dilatoriness; that their disregard of repeated instructions and orders was willful; and that lesser sanctions had proved ineffective. *Id.* at 5–8. No Defendant objected to the Second R&R either.

On September 2, 2025, this Court adopted the Second R&R in full, struck Jigar's Answer and Ashaben and Chirag's joint Answer *with prejudice*, and directed the Clerk to enter default. D.E. 129 (the "Default Order"). The Court found that Defendants had repeatedly failed to comply with deadlines, declined to timely retain new counsel, failed to meet their discovery obligations, and willfully did nothing despite explicit directions concerning how to preserve their ability to

defend the action. *Id.* at 3–4. The Clerk thereafter entered default against each Defendant. The Court also denied Plaintiff's request for attorney's fees and costs *without prejudice* as premature and permitted Plaintiff to renew that request in connection with a motion for default judgment. *Id.* at 4.

Plaintiff moved for default judgment in December 2025 and later supplemented his request for attorney's fees and costs. DJ Mot.; D.E. 139 (the "Fee Supplement"). Chirag then retained new counsel and sought an adjournment of the Default Judgment Motion. On January 5, 2026, the Court denied that request, noting Defendants' extended failure to defend the action, but permitted Chirag to seek relief under Rule 55(c). D.E. 140. Chirag filed the Vacate Motion on January 27, 2026. Plaintiff filed the Vacate Opposition, and Chirag filed the Vacate Reply. Jigar and Ashaben have not moved to vacate their defaults or otherwise responded to the Default Judgment Motion.

## II. LEGAL STANDARDS

### A. Federal Rule of Civil Procedure 55(c)

Rule 55(c) provides that a court "may set aside an entry of default for good cause." Fed. R. Civ. P. 55(c). The Third Circuit directs courts to consider three factors: "(1) whether the plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense; [and] (3) whether the default was the result of the defendant's culpable conduct." *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984). Because an entry of default is not a judgment, Rule 55(c) is applied more liberally than Rule 60(b), and doubtful cases generally should be resolved in favor of a decision on the merits. *Feliciano v. Reliant Tooling Co.*, 691 F.2d 653, 656 (3d Cir. 1982). That preference, however, does not require a court to disregard a party's deliberate or recklessly indifferent noncompliance. *See Hritz v. Woma Corp.*, 732 F.2d 1178, 1182–83 (3d Cir. 1984); *Wells v. Rockefeller*, 728 F.2d 209, 214 (3d Cir. 1984).

A meritorious defense exists when the defendant alleges specific facts that, if established at trial, would constitute a complete defense. *$55,518.05 in U.S. Currency*, 728 F.2d at 195–96. The Court does not decide whether the defense ultimately will prevail, but "simple denials or conclusionary statements" are insufficient. *Id.* at 195. Prejudice ordinarily requires more than delay or the expense of continued litigation; relevant considerations include lost evidence, increased opportunities for fraud or collusion, substantial reliance on the default, or other impairment of the plaintiff's ability to prosecute the claim. *Feliciano*, 691 F.2d at 656–57. Culpability requires more than mere negligence and is shown by willfulness, bad faith, or reckless disregard of repeated communications from the opposing party and the Court. *Hritz*, 732 F.2d at 1182–83.

**B. Federal Rule of Civil Procedure 55(b)**

After the Clerk enters default, the Court may enter default judgment under Rule 55(b)(2). Entry of default does not automatically entitle a plaintiff to judgment. The Court must assure itself that jurisdiction and service are proper and that the well-pleaded allegations state a legally sufficient claim. Upon default, a defendant is deemed to admit well-pleaded facts, but not legal conclusions. *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990). If those requirements are satisfied, the Court also considers three factors: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000) (the "*Chamberlain* factors").

Importantly, a determination that default judgment is warranted as to liability does not establish the amount of monetary relief. A default does not admit damages, and when damages are not a sum certain or capable of certain computation, the Court must determine the amount rather than accept the figure demanded by the plaintiff. *Comdyne I*, 908 F.2d at 1149; *PPG Indus.*

*v. Jiangsu Tie Mao Glass Co.*, 47 F.4th 156, 161 (3d Cir. 2022). The burden of establishing monetary relief remains with the plaintiff. In a New Jersey contract action, damages must be proven to a reasonable degree of certainty. *Specialty Rx v. Boonton Care Ctr.*, No. 20-18665, 2021 WL 1827270, at *2 (D.N.J. May 7, 2021) (quoting *Lightning Lube v. Witco Corp.*, 4 F.3d 1153, 1176 (3d Cir. 1993)).

Rule 55(b)(2) leaves the procedure for determining non-sum-certain damages to the Court's discretion. When the existing record is insufficient, the Court may require supplemental proof and need not conduct a hearing unless one is necessary to establish an adequate basis for the award. *Basara v. CBRL Grp.*, No. 10-1411, 2013 WL 3513873, at *3 (D.N.J. July 11, 2013). The Court also need not award inadequately supported damages merely because liability has been established by default. *Gen. Elec. Cap. Corp. v. Automated Digit. Consultants, Inc.*, No. 15-1682, 2016 WL 756559, at *2 (D.N.J. Feb. 25, 2016). Thus, the Court may separate liability from the amount of relief. In *Basara*, for instance, the Court granted default judgment as to liability, reserved decision on damages, attorney's fees, and costs, and directed the movant to submit additional proof before the amount could be fixed. *Basara*, 2013 WL 3513873, at *5. Reservation does not relieve the plaintiff of its burden; it holds the amount of relief in abeyance while the Court develops a record sufficient for final judgment.

## III. ANALYSIS

The Motions present sequential questions. The Court first considers whether Chirag has shown good cause to vacate the default entered against him. Because he has not, the Court will **DENY** the Vacate Motion, and so Chirag remains in default. The Court then determines whether the Amended Complaint's well-pleaded allegations support judgment on each remaining claim and what relief may properly be entered on the present record against each Defendant.

That second inquiry requires the Court to distinguish between liability and monetary relief. The well-pleaded allegations establish liability on Counts I, VI, and VIII, but Plaintiff's submissions do not establish most of the monetary relief he requests. The present record leaves unresolved the legal effect of the alleged twelve-percent oral interest term, the proper crediting of $210,000 in prior payments, the basis for post-maturity and prejudgment interest, the legal basis and measure of any monetary recovery under Counts VI and VIII, the amount of Jigar's contractual fee obligation, and the basis for imposing any additional fee liability on Ashaben or Chirag. Some requests fail on the present record as a matter of law. But the Court can resolve Plaintiff's contractual entitlement to fees against Jigar and his discrete discovery sanction request now, while the remaining requests require further proof before the Court can enter final monetary judgment.

Accordingly, and as explained below, the Court will **GRANT** default judgment as to liability on Counts I, VI, and VIII; **DENY** default judgment on Counts III, IV, V, and VII; **DENY** punitive damages and compound interest; **GRANT** Plaintiff's request for reasonable attorney's fees and court costs against Jigar under the Combined Note as to entitlement; **AWARD** Plaintiff $2,478.55 against Jigar for his failure to appear for the November 14, 2024 deposition; and **RESERVE** the remaining requests for compensatory damages, other interest, monetary relief under Counts VI and VIII, the amount of the contractual fee and cost award against Jigar, and any remaining requests for attorney's fees and costs against Ashaben and Chirag. The Court will direct Plaintiff to file one new motion addressing the reserved monetary relief, the amount of the contractual fee and cost award against Jigar, and any remaining fee or cost request against Ashaben or Chirag within forty-five days. The Court will determine after reviewing that motion whether any genuine factual issue requires a hearing under Rule 55(b)(2).

**A. The Court Will Deny Chirag's Motion to Vacate**

Rule 55(c) requires the Court to consider whether (1) Plaintiff will be prejudiced, (2) Chirag has a meritorious defense, and (3) the default resulted from Chirag's culpable conduct. *$55,518.05 in U.S. Currency*, 728 F.2d at 195. No single factor controls the analysis. *See Hritz*, 732 F.2d at 1181–83. Thus, although courts have a preference for deciding a case on the merits, *see id.*, a potentially meritorious defense does not end the inquiry as the Court must weigh that defense against the actual prejudice and culpability shown by the record.

Here, Chirag has identified a potentially litigable good faith and value defense, so the meritorious defense factor weighs modestly in his favor. But this default did not arise from a single missed pleading deadline. It followed months of discovery noncompliance, repeated warnings, an unsuccessful lesser sanction, and a final opportunity to cure. That history materially changes the prejudice and culpability analysis and, for the reasons below, those two factors outweigh Chirag's proposed defense.

*1. Meritorious defense*

Chirag contends that Mahi purchased the Property in an arm's-length transaction, for reasonably equivalent value, and without an intent to hinder Plaintiff. He submits evidence that Mahi obtained $640,000 in financing from Rockland Trust, that the Property was appraised at $800,000, that Mahi took recorded title, and that Jigar owned a separate residence. Chirag Cert. ¶¶ 2–13; D.E. 142-5; Appraisal at 2; Reply Deeds. Under the UFTA, a transferee's good faith and payment of reasonably equivalent value can provide a complete defense to avoidance. N.J. Stat. Ann. § 25:2-30(a); *N.J. Dep't of Env't Prot. v. Caldeira*, 338 N.J. Super. 203, 224–25 (App. Div. 2001). If Chirag established his account with admissible evidence and traced the consideration to the transferor, those facts could defeat or materially narrow Plaintiff's transfer-based claims.

Plaintiff has identified serious gaps in that defense. The settlement statement for the $800,000 real-estate transaction reflects a $640,000 new loan, a $160,000 deposit, and substantial seller-side payoffs. D.E. 142-6 at 1–3. But neither that statement nor the materials Chirag identifies account for the separate $400,000 in business consideration reflected in the purchase agreement and Appraisal or establish whether that additional consideration was paid and to whom. D.E. 142-3 at 1, 7; Appraisal at 2. The Appraisal also identifies a lease between JVR Trust and an entity controlled by Jigar, which bears on whether Jigar retained a practical interest in the Property. Appraisal at 2.

At the same time, Plaintiff's own Default Judgment exhibits contain evidence supporting a nonfraudulent account: Jigar's supplemental interrogatory answers state that the JVR Trust sold the Property because it could no longer afford the mortgage payments and used the sale proceeds to pay the mortgage and other creditors. D.E. 134-3 at 56. Those competing facts may ultimately undermine or support Chirag's defense. But under Rule 55(c), the Court asks whether Chirag has alleged specific facts that, if established at trial, would constitute a complete defense—not whether the defense ultimately will prevail. *$55,518.05 in U.S. Currency*, 728 F.2d at 195–96. This factor therefore weighs modestly in Chirag's favor.

Importantly though, the Court's conclusion that Chirag has identified a litigable defense does not restore Chirag to the posture of a defendant who merely failed to answer a complaint. Before the Clerk of Court entered default against Chirag, Judge Adams first recommended striking his Answer ***without prejudice*** and gave him a final opportunity to cure; when he did nothing, the Second R&R treated the meritoriousness factor as largely neutral, concluded that the balance of the *Poulis* factors warranted a dispositive sanction, and recommended striking the Answer with prejudice. First R&R at 5–6; Second R&R at 7–8. This Court adopted that recommendation. Default Order at 3–4. Thus, the Rule 55(c) merits factor favors Chirag only in the limited sense

that he has identified a defense worth litigating if the default were reopened; it does not erase the prior with-prejudice sanction entered after he failed to preserve that opportunity.

2. *Prejudice to Plaintiff*

Prejudice ordinarily requires more than delay, inconvenience, or the expense of litigating on the merits. *Feliciano*, 691 F.2d at 656–57. Consistent with that rule, a court in this District recently vacated an entry of default notwithstanding substantial delay because the plaintiff had not shown loss of evidence, fraud or collusion, or an impairment of its ability to pursue the claims. *Fed. Nat'l Mort. Ass'n v. Ocean Grove NJ LLC*, No. 23-3554, 2025 WL 2783718, at *3 (D.N.J. Sept. 30, 2025). The relevant question for the Court therefore is not just how long this case has been pending, but whether Chirag's nonparticipation has materially impaired Plaintiff's ability to litigate it.

Plaintiff has not shown that Chirag's noncompliance has resulted in the permanent loss of evidence, such as the destruction of a document or the unavailability of a witness. But prejudice is not limited to irretrievable evidentiary loss. In the default judgment context, that prejudice also includes the burden imposed when a party's noncompliance impedes the opponent's ability to prepare a full and complete trial strategy. *Emerson Radio Corp. v. Emerson Quiet Kool Co.*, No. 22-1809, 2023 WL 4453604, at *3 (3d Cir. July 11, 2023). More directly, *Securities and Exchange Commission v. Schrichte* denied a Rule 55(c) motion following a discovery-based default where years of nonproduction deprived the plaintiff of potentially necessary evidence and forced it to incur unnecessary discovery and motion practice. No. 16-5773, 2024 WL 5494393, at *1 n.1 (E.D. Pa. Feb. 6, 2024).

That is exactly the prejudice present here. Chirag failed to provide discovery relevant to the circumstances of the challenged transfer—the same transaction on which his asserted defense depends. His noncompliance has therefore impaired Plaintiff's ability to investigate the

transaction, test the factual basis of Chirag's defense, and prepare his case on the merits. The Second R&R likewise found that Defendants' noncompliance prevented Plaintiff from obtaining discovery needed to prosecute the action, and the Default Order adopted that finding after no Defendant objected. Second R&R at 5–8; Default Order at 3–4. That litigation-specific impairment goes beyond the ordinary delay and expense associated with reopening a default. The prejudice factor therefore weighs against vacatur.

*3. Chirag's culpability*

The culpability factor weighs heavily against Chirag. Culpable conduct requires more than negligence—reckless disregard of repeated communications and court directives satisfies that standard. *Hritz*, 732 F.2d at 1182–83. A litigant who knowingly permits a default to occur as a matter of choice must ordinarily live with the consequences. *Wells*, 728 F.2d at 214.

The record establishes actual notice and repeated personal warnings. After counsel withdrew, Chirag was personally responsible for complying with discovery and Court orders. He attended the September 2024 conference, supplied his mailing and email addresses, and was subject to the Discovery Order requiring responses by October 4, 2024. He provided nothing. He then attended the January 7, 2025 conference, at which the continuing noncompliance and impending motion to strike were discussed, and he still neither served discovery nor sought an extension. Discovery Order; D.E. 121. Chirag also did not oppose the motion to strike, D.E. 122, and did not use the final cure period provided by the First R&R or respond to the Second R&R.

Chirag filed medical evidence to explain his noncompliance. While it warrants meaningful consideration, it does not account for his full history of noncompliance. He certifies that serious illness caused repeated hospitalizations in 2025, impaired his ability to work, and led him to move from North Carolina to Tennessee and then to Massachusetts. Chirag Cert. ¶¶ 14–18. Those circumstances may explain some period of diminished attention in 2025. They do not explain the

October 2024 discovery default, however, and they do not explain why Chirag—after personally appearing at the January 2025 conference—never requested relief from a deadline, never notified the Court that his health prevented compliance, and never updated his address. The chronology therefore does not support treating the default as an isolated consequence of illness.

The Court's prior findings reinforce that conclusion. The Second R&R found a history of dilatoriness, personal responsibility, willful noncompliance, prejudice, and the ineffectiveness of lesser sanctions; the Default Order adopted those findings after no Defendant objected. Second R&R at 5–8; Default Order at 3–4. Those findings do not eliminate the Court's obligation to conduct the Rule 55(c) analysis, but they are highly relevant because several considerations in the discovery-sanction analysis—prejudice, meritoriousness, and willfulness—substantially overlap the present inquiry. *See Schrichte*, 2024 WL 5494393, at *1 n.1 (applying, in the Rule 37 default-sanction context, the *Poulis* factors of prejudice, meritoriousness, and whether the defaulting party's conduct was willful or in bad faith). Chirag's course of conduct therefore reflects, at minimum, reckless disregard of known obligations rather than excusable neglect.

* * *

Balancing the three factors, the Court concludes that Chirag has not shown good cause to vacate the Clerk's entry of default. The Court does not discount either Chirag's potentially litigable defense or the Third Circuit's strong preference for resolving cases on the merits. But this case is materially different from the ordinary one in which a defendant misses a deadline and then promptly seeks an opportunity to present a defense that has never been heard. As detailed above, Chirag filed an Answer and had the opportunity to litigate his defenses. When he later failed to comply with his discovery obligations, Judge Adams first recommended striking his Answer without prejudice and afforded him a final opportunity to cure the deficiencies and seek reinstatement. First R&R at 5–6. Chirag did not do so. Only then did Judge Adams recommend

striking the Answer *with prejudice*, after concluding that five of the six *Poulis* factors favored that sanction; this Court adopted that recommendation without objection. Second R&R at 5–8; Default Order at 3–4. Thus, although Chirag's litigable defense weighs in favor of vacatur, it does not neutralize the prejudice and culpable conduct that led to the default, nor does it place him in the same posture as a defendant whose first omission was a missed pleading deadline. *See Emerson Radio*, 2023 WL 4453604, at *3–4 (affirming default judgment despite a meritorious defense where prejudice and culpable conduct favored default).

Nor do cases in this Circuit favoring vacatur warrant a different result. For instance, in *Mrs. Ressler's Food Products v. KZY Logistics LLC*, the Third Circuit reversed the denial of vacatur because the defendant had a meritorious defense, the plaintiff would not be prejudiced, and alternative sanctions remained available; culpability was the only factor weighing against relief. 675 F. App'x 136, 141–43 (3d Cir. 2017). Likewise, *Federal National Mortgage Ass'n* granted Rule 55(c) relief despite the defendants' culpable conduct because the absence of prejudice and the existence of meritorious defenses favored vacatur, and the court concluded that those considerations, together with the preference for merits adjudication, tipped the balance. 2025 WL 2783718, at *6. The balance here is materially different. Chirag's noncompliance impaired Plaintiff's ability to obtain discovery and test the factual basis of the transfer defense, and he repeatedly disregarded obligations of which he had personal notice. On this record, the prejudice and culpability factors outweigh the litigable defense factor. The Motion to Vacate will therefore be **DENIED**.

**B. The Court Will Grant in Part, Deny in Part, and Reserve in Part Plaintiff's Default Judgment Motion**

Because the defaults remain in place, the Court next determines whether Plaintiff has established entitlement to default judgment against all three Defendants. The Court first addresses jurisdiction and service, then the sufficiency of each claim, the *Chamberlain* factors, and then finally, the requested relief.

*1. The Court has subject matter and personal jurisdiction*

The Court has subject matter jurisdiction under 28 U.S.C. § 1332(a)(1). Section 1332 confers jurisdiction over civil actions in which the amount in controversy exceeds $75,000, exclusive of interest and costs, and the dispute is between citizens of different States. Complete diversity requires that no plaintiff share state citizenship with any defendant. *GBForefront, L.P. v. Forefront Mgmt. Grp.*, 888 F.3d 29, 34 (3d Cir. 2018). For an individual, citizenship is determined by domicile (his or her fixed and permanent home), not by residence. *McCann v. Newman Irrevocable Trust*, 458 F.3d 281, 286 (3d Cir. 2006).

Here, the Amended Complaint alleges that Plaintiff is a citizen of New Jersey and that Jigar, Ashaben, and Chirag are citizens of Massachusetts. Am. Compl. ¶¶ 15–18. Complete diversity therefore exists.

The amount in controversy is also readily satisfied. Plaintiff alleges that he advanced Jigar $500,000 and seeks recovery of unpaid principal, interest, and related relief. Am. Compl. ¶¶ 20, 22–69. Accordingly, the Court has diversity jurisdiction under § 1332(a)(1).

The Court also has personal jurisdiction over all three Defendants. Jigar appeared and answered without preserving a personal jurisdiction objection, thereby waiving it. Fed. R. Civ. P. 12(h)(1); D.Es. 4, 75. And Ashaben and Chirag raised personal jurisdiction defenses in their motion to dismiss, but the Court rejected those challenges after finding that the alleged intentional

transfer was directed at a New Jersey creditor and that exercising jurisdiction comported with due process. MTD Op. at 7–9.

*2. Service was proper*

Service and notice present no impediment to default judgment here. Jigar appeared and answered the original pleading. D.E. 4. Ashaben and Chirag were personally served with the Amended Complaint and summons on March 22, 2023. D.Es. 68–69. They then appeared, moved to dismiss, and filed their joint Answer. MTD Op.; D.E. 100. Their defaults therefore did not arise from a lack of notice or a defect in service.

*3. The Amended Complaint supports judgment on some, but not all, claims*

Upon default, a defendant is deemed to admit the complaint's well-pleaded factual allegations, but not its legal conclusions. *See Polidoro v. Saluti*, 675 F. App'x 189, 190 (3d Cir. 2017). The Court therefore evaluates each count independently and does not enter judgment merely because the allegations are unopposed.

a. <u>Loan-based claims</u>

**Count I—breach of contract.** Under New Jersey law, to prevail on a breach of contract claim, a plaintiff must establish a contract containing definite terms, the plaintiff's performance, the defendant's breach, and a resulting loss. *Globe Motor Co. v. Igdalev*, 225 N.J. 469, 482 (2016). The admitted allegations and Combined Note establish those elements. Plaintiff advanced Jigar $500,000; Jigar executed the Combined Note memorializing that indebtedness; the Combined Note required periodic interest payments and repayment of principal by December 31, 2020; and Jigar did not repay the principal when due. Am. Compl. ¶¶ 22–88 & Combined Note. Therefore, Plaintiff has established Jigar's liability for breach of contract and entitlement to compensatory damages in some amount. The Default Judgment Motion is **GRANTED** as to liability against Jigar on Count I.

What default does not establish, however, is the amount of that recovery. Plaintiff has submitted evidence consistent with the asserted twelve-percent rate. The Amended Complaint alleges that rate, and Mahendra swore that, before the first loan, he told Jigar that the funds would require the customary twelve-percent "tako vyaj" and that Jigar agreed. Am. Compl. ¶¶ 31–35; Mahendra Aff. ¶ 6. Mahendra and Naresh also corroborate Plaintiff's allegation that at the September 2020 meeting, Jigar and Plaintiff discussed and agreed that the $210,000 already paid represented twelve-percent interest and that no principal had been repaid. Mahendra Aff. ¶ 15; Naresh Aff. ¶ 10.

Plaintiff also relies on Jigar's payment history as evidence that the parties agreed to the asserted twelve-percent rate, and provides this chart to illustrate how Jigar's payments support his claim that the parties agreed to the twelve-percent rate:

| For Year Ending: | 12% Interest Due: | Interest Paid: |
|---|---|---|
| 2016 | $40,000 | $40,000 |
| 2017 | $60,000 | $60,000 |
| 2018 | $60,000 | $60,000 |
| 2019 | $60,000 | $50,000 |
| 2020 | $60,000 | None |

DJ Mot. at 4.

The table provides some support for Plaintiff's account. Assuming the $500,000 principal remained outstanding, the $60,000 payments in 2017 and 2018 equal twelve percent of that principal, and Plaintiff contends that Jigar's $50,000 payment in 2019 left $10,000 of that year's asserted interest unpaid (for the final two months).

But the 2016 entry does not fit that pattern. Plaintiff identifies $40,000 as the twelve-percent interest due for 2016, even though the five loans were advanced at different times during that year. That $40,000 amount appears inaccurate—the initial $300,000 loan alone would generate $36,000 in annual interest at twelve percent, and adding prorated twelve-percent interest

on the four additional $50,000 advances made on February 22, May 23, July 31, and December 26, 2016, would result in more than $47,000 in total interest for 2016, depending on the applicable day-count convention. Plaintiff's present submissions do not explain that discrepancy.

In addition, Plaintiff's own Default Judgment exhibits contain contrary evidence concerning both the agreed rate and the treatment of the payments. Jigar denied agreeing to twelve-percent interest in his interrogatory response. At his deposition, Jigar acknowledged that twelve percent was *discussed*, but testified that the parties ultimately signed for three percent and that three percent was the agreed-upon rate. D.E. 134-3 at 49, 99–100. Jigar's supplemental interrogatory response characterizes the $210,000 as payments toward principal, and he testified that the $60,000 payments went toward repayment of the loans and that Plaintiff later asked him to pay $5,000 per month toward principal and interest. *Id.* at 55, 118–19.

Ultimately, Jigar's payment history provides some evidence consistent with Plaintiff's asserted twelve-percent arrangement, but it does not establish the proper allocation of the payments or the legally enforceable interest rate. Nor does Plaintiff's present calculation account for the 2016 discrepancy. Because default does not establish the amount of damages, the Court will not resolve those issues by simply adopting Plaintiff's calculation. *PPG Indus.*, 47 F.4th at 161; *Comdyne I*, 908 F.2d at 1149.

The legal basis for enforcing twelve percent is also unclear. The Default Judgment Motion labels the twelve-percent arrangement an oral modification and invokes part performance under N.J. Stat. Ann. § 25:1-5(f), DJ Mot. at 16–17, but the Amended Complaint and Mahendra Affidavit place the date of the asserted twelve-percent agreement before execution of the written notes, and after this asserted date, the parties later executed the Combined Note expressly stating a three-percent rate. Am. Compl. ¶¶ 33–35, 64–69; Mahendra Aff. ¶ 6. Section 25:1-5(f), however, applies by its terms to qualifying credit extended by a person engaged *in the business of lending*

*or arranging credit*, yet Plaintiff explicitly alleges that he is *not* in that business. Am. Compl. ¶ 30. The present Default Judgment Motion does not explain whether Plaintiff seeks to enforce a contemporaneous oral term, a later modification shown by performance, or both; whether the payment history satisfies the requirements of part performance or modification; or how that theory operates alongside the Combined Note. The Court therefore **RESERVES** the applicable non-compound interest rate.

Compound interest can be resolved now. Plaintiff calculates the debt using a "12% annual compounded interest rate," DJ Mot. at 26, even though the Combined Note expressly calls for "simple interest only" and Plaintiff identifies no agreement authorizing compounding. New Jersey generally disfavors compound interest. *Henderson v. Camden Cnty. Mun. Util. Auth.*, 176 N.J. 554, 560 (2003). In *Shadow Lawn Savings & Loan Ass'n v. Palmarozza*, the Appellate Division applied that principle and held that contractual interest could not be compounded absent an express agreement authorizing it. 190 N.J. Super. 314, 317–18 (App. Div. 1983). Plaintiff cites no authority permitting compound interest notwithstanding the Combined Note's express simple-interest term. Plaintiff's request for compound interest is therefore **DENIED**.

The balance of Plaintiff's requested monetary relief on Count I is **RESERVED**. Plaintiff may pursue the reserved relief through a new motion described in Section III.B.5. Any request for prejudgment interest in that motion must address the equitable and discretionary nature of such an award in a New Jersey contract action rather than treat New Jersey Court Rule 4:42-11 as an automatic add-on. *Litton Indus. v. IMO Indus.*, 200 N.J. 372, 390–91 (2009).

The Combined Note separately requires Jigar to pay reasonable attorney's fees and court costs incurred in collection or enforcement. Because the Court is entering default judgment against Jigar on Count I, Plaintiff has established entitlement to those fees and costs against Jigar. The amount of that award is reserved as discussed in Section III.B.5.

**Count III—unjust enrichment.** Count III seeks repayment of the same loans governed by the promissory notes. Although alternative pleading may be appropriate before the validity or scope of a contract is established, the Court is now entering judgment on an express contract that governs the same subject matter. New Jersey law does not permit quasi-contractual recovery where a valid express contract governs the same subject matter. *Suburban Transfer Serv. v. Beech Holdings*, 716 F.2d 220, 226–27 (3d Cir. 1983) (applying New Jersey law and holding that quasi-contractual recovery is unavailable where a valid, unrescinded express contract governs the same subject matter).[4] Plaintiff does not allege that the notes are void or rescinded and Count III identifies no benefit outside their subject matter. Default judgment on Count III will therefore be **DENIED**.

**Count IV—fraud.** Common law fraud requires a material misrepresentation of a presently existing or past fact, knowledge of falsity, intent to induce reliance, reasonable reliance, and resulting damages. *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 610 (1997). A promise of future performance can support fraud only when the promisor, at the time of the promise, has no present intention to perform. *Van Dam Egg Co. v. Allendale Farms, Inc.*, 199 N.J. Super. 452, 457 (App. Div. 1985). A later failure to perform, standing alone, establishes breach rather than fraudulent intent at inception. *Barry v. N.J. State Highway Auth.*, 245 N.J. Super. 302, 310 (Ch. Div. 1990). "Fraud based claims are subject to a heightened pleading standard, requiring a plaintiff to 'state with particularity the circumstances constituting fraud or mistake.'" *Van Brunt v. Wells Fargo Bank, N.A.*, No. 19-170, 2022 WL 4366414, at *5 (D.N.J. Sept. 21, 2022) (quoting Fed. R. Civ. P. 9(b)). "The heightened pleading standard set forth in Rule 9(b) applies to a plaintiff's CFA

[4] Although Plaintiff recites the elements of unjust enrichment in the Default Judgment Motion, he does not address the effect of the express notes or identify any authority permitting unjust-enrichment recovery where, as here, an enforceable contract governs the same loans. *See* DJ Mot. at 14.

and common law fraud claims." *Id.* (citing *Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 524 (D.N.J. 2008)).

The Amended Complaint does not plead enough facts to cross that line. It alleges that Jigar "never intended" to repay and invokes an asserted pattern of similar borrowing, but the allegation concerning his intent is conclusory and the alleged pattern is not pleaded with transaction-specific facts sufficient to show what Jigar intended when he made these particular promises in 2016. Am. Compl., Count IV ¶¶ 8–16. The Naresh Affidavit is narrower still: it states only that other community members approached Naresh after Jigar failed to repay "loans of this nature," without identifying the dates, amounts, terms, or payment histories of those transactions. Naresh Aff. ¶ 2.

Nor do Plaintiff's evidentiary submissions cure that deficiency. Mahendra materially corroborates Plaintiff's assertion that Jigar agreed to the twelve-percent interest term, but he does not state that Jigar lacked a present intent to repay when the loans were made. Mahendra Aff. ¶ 6. The Default Judgment Motion otherwise relies on Jigar's promises, his later nonpayment, and the alleged history of similar borrowing. DJ Mot. at 17–19. Those circumstances may support the breach claim, but without transaction-specific facts tying the alleged prior loans to Jigar's state of mind in 2016, they do not establish that his repayment promises were false when made.

If anything, Jigar's pleaded performance reinforces that distinction. Jigar paid Plaintiff $210,000 over four years, including payments Plaintiff alleges reflected the asserted twelve-percent rate for 2016 through 2018. Am. Compl. ¶¶ 70–72. Those payments do not excuse Jigar's later failure to repay the principal, and they do not prove that he intended to perform fully. They substantially weaken Plaintiff's allegation that Jigar had no present intention to perform when he obtained the loans. At most, the well-pleaded allegations establish that Jigar ultimately failed to fulfill his repayment obligations.

Because default admits well-pleaded facts, not the legal conclusion that Jigar possessed fraudulent intent at inception, Plaintiff has not established common law fraud. Default judgment on Count IV will therefore be **DENIED**.

**Count V—implied covenant of good faith and fair dealing.** The implied covenant protects a party's right to receive the fruits of the contract and may constrain a bad-faith exercise of contractual discretion. *Wade v. Kessler Inst.*, 172 N.J. 327, 340–41 (2002). It does not create a second claim where the alleged covenant breach and the express breach "basically rest on the same conduct." *Id.* at 344. Count V relies on Jigar's failure to make the payments required by the notes and the same alleged intent invoked in Count IV. Am. Compl., Count V ¶¶ 18–22. It identifies no distinct exercise of contractual discretion, obstruction of Plaintiff's performance, or other bad faith conduct separate from the nonpayment underlying Count I. Default judgment on Count V will therefore be **DENIED**.

* * *

In sum, for Plaintiff's loan-based claims, his Default Judgment Motion is **GRANTED** as to liability on Count I; Plaintiff's request for compound interest is **DENIED**; the remaining monetary relief on Count I is **RESERVED**; and default judgment is **DENIED** on Counts III, IV, and V. Plaintiff is also entitled to reasonable attorney's fees and court costs against Jigar under the Combined Note, with the amount **RESERVED**.

b. <u>Fraud- and transfer-based claims</u>

**Count VI—fraudulent transfer.** The UFTA renders a transfer fraudulent as to a creditor when the debtor makes it "[w]ith actual intent to hinder, delay, or defraud" that creditor. N.J. Stat. Ann. § 25:2-25(a). The statute concerns property of the debtor: an "asset" is "property of a debtor," and a "transfer" includes any direct or indirect mode of parting with "an asset or an interest in an asset." *Id.* §§ 25:2-21, -22. Thus, the Court first asks whether the challenged transaction disposed

of property or an interest that belonged to Jigar and would otherwise have been available to creditors; it then asks whether the transfer was made with the requisite intent. *Gilchinsky v. Nat'l Westminster Bank N.J.*, 159 N.J. 463, 475–77 (1999) (explaining that courts determine actual intent by considering the statutory "badges of fraud," whose presence may support an inference of fraudulent intent).

Plaintiff alleges that JVR Trust was revocable, that Jigar and Ashaben retained control of its property, and that they used the JVR Trust to convey the Property to Mahi for the purpose of shielding it from Plaintiff. Am. Compl. ¶¶ 92–96; *id.*, Count VI ¶¶ 24–32. This Court previously held those allegations sufficient to state the UFTA claim against Ashaben and Chirag. MTD Op. at 10–11. The Default Judgment record reinforces the pleaded property-interest theory: the JVR Trust instrument states that trust property is held for the sole benefit of its beneficiaries, Am. Compl. Ex. 15, and Jigar's discovery responses identify Jigar and Ashaben as the Trust's sole trustees and beneficiaries, D.E. 134-3 at 50, 56. Jigar therefore held at least a beneficial interest implicated by the conveyance, and he and Ashaben, acting as trustees of JVR Trust, executed the deed conveying the Trust's interest in the Property to Mahi. Am. Compl. ¶¶ 92–96 & Ex. 19. Because the UFTA reaches an indirect disposition of an interest in an asset, the admitted allegations establish the threshold transfer of a debtor property interest.

Plaintiff also alleges that, after Jigar's payments deteriorated, Chirag formed Mahi and all three Defendants completed the conveyance for the purpose of placing the Property beyond Plaintiff's reach. *Id.* ¶¶ 94–96; *id.*, Count VI ¶¶ 24–32. The timing of Mahi's formation and the conveyance, the close relationship among the participants, and the proximity to Jigar's payment problems further support actual intent under the badges-of-fraud analysis. *Gilchinsky*, 159 N.J. at 475–77. The Court therefore determines, as to the parties presently before it, that the admitted allegations establish an actual-intent fraudulent transfer under N.J. Stat. Ann. § 25:2-25(a).

That determination does not itself establish any particular remedy against Jigar, Ashaben, or Chirag; the relief available on Count VI is addressed below.

Establishing the fraudulent transfer, however, does not resolve the relief the Court may enter on the present record. Although the Default Judgment Motion identifies the statutory badges of fraud and argues that the conveyance violated the UFTA, it does not address whether the Court may avoid a conveyance affecting a nonparty transferee's title or enjoin that nonparty's disposition of the Property. *See* DJ Mot. at 19–21. Nor does Plaintiff analyze which existing Defendant, if any, may be subject to a money judgment under the UFTA or the statutory limitations and defenses governing such recovery. *See id.* Those remedial questions remain for the Court notwithstanding Defendants' default.

The Court will not avoid the deed or enjoin disposition of the Property on the present party structure. Mahi—not Chirag individually—is the grantee of record and current titleholder, and JVR Trust is the identified transferor. D.E. 147-3; Chirag Cert. ¶ 10. Neither entity is a party to this case. *See* Dkt. A transferee that retains an interest in transferred property is a necessary party to an action seeking to void the transfer because the requested judgment would directly impair that party's property interest. *N.J. Dep't of Env't Prot. v. Caldeira*, 338 N.J. Super. 203, 223–26 (App. Div. 2001); *see also Perlman v. Virtua Health, Inc.*, No. 01-651, 2005 WL 8174806, at *7 (D.N.J. Apr. 12, 2005) (treating the transferee as a necessary party to the fraudulent transfer claim). Rule 19 embodies the same principle. *See* Fed. R. Civ. P. 19(a)(1)(B). Mahi must have an opportunity to protect its title and to invoke any good faith and value defense available under N.J. Stat. Ann. § 25:2-30(a), for which the transferee bears the burden. *Caldeira*, 338 N.J. Super. at 224–25. The Court will therefore **DENY *without prejudice*** Plaintiff's requests to avoid the deed and enjoin further disposition of the Property. The Court expresses no view on the timeliness or procedural availability of any proceeding that includes the necessary parties.

A separate money judgment under Count VI presents a different issue, but Plaintiff has not carried his burden on the Default Judgment Motion. The UFTA permits a money judgment, subject to statutory limits and defenses, against the first transferee or a person for whose benefit the transfer was made. N.J. Stat. Ann. § 25:2-30(b). Mahi is the first transferee. Plaintiff does not identify which existing Defendant, if any, qualifies as a person for whose benefit the transfer was made, and he has not established the Property's net value or the amount of consideration actually paid. DJ Mot. at 19–21. Nor does he explain how any transfer-based monetary recovery would avoid duplicating the contract recovery on Count I. Whether Plaintiff may obtain a money judgment under Count VI against a Defendant presently before the Court, and if so in what amount, is therefore **RESERVED**. Plaintiff's new motion must identify the statutory basis for imposing monetary liability on a named Defendant, support the amount with competent evidence, and account for any overlapping recovery.

**Count VII—aiding and abetting.** New Jersey recognizes aiding and abetting as an independent tort. A plaintiff must establish that the principal committed a wrongful act causing injury, that the alleged aider was generally aware of his role in the wrongful activity, and that he knowingly and substantially assisted the principal violation. *State, Dep't of Treasury v. Qwest Commc'ns Int'l*, 387 N.J. Super. 469, 483–84 (App. Div. 2006). Count VII is pleaded as a common law aiding-and-abetting claim arising from the fraudulent transfer alleged in Count VI. Am. Compl., Count VII ¶¶ 33–39.

The Court previously permitted Count VII to proceed at the pleading stage. MTD Op. at 10–11. That ruling relied on the general common law aiding-and-abetting framework and the fraudulent-transfer allegations. At default judgment, the Court must still determine whether the admitted allegations establish a legally cognizable claim.

Here, they do not. In *Banco Popular North America v. Gandi*, the New Jersey Supreme Court considered what causes of action were available against an attorney who allegedly helped his client transfer assets to frustrate a creditor. 184 N.J. 161, 175–78 (2005). The Court rejected a freestanding tort of "creditor fraud," but held that the creditor could pursue a civil conspiracy claim based on the UFTA violation. *Id.* at 177–78. Thus, *Banco Popular* establishes that a UFTA violation may supply the underlying wrong for civil conspiracy; it neither recognized nor addressed a distinct cause of action for aiding and abetting a UFTA violation.

The authority addressing that distinction counsels against extending *Banco Popular*. In *Travelers Property Casualty Co. of America v. Quickstuff, LLC*, a court in this District considered the same argument and declined to read *Banco Popular* as recognizing aiding and abetting liability for a UFTA violation. No. 14-6105, 2016 WL 7231605, at *8 & n.5 (D.N.J. Dec. 14, 2016). *Travelers* distinguished the conspiracy theory that *Banco Popular* expressly approved from an aiding-and-abetting theory against a nontransferee. *Id.* Although *Travelers* is not controlling, its reading of *Banco Popular* is persuasive because it does not transform the New Jersey Supreme Court's recognition of one form of secondary liability into recognition of another.

*Mann ex rel. Estate of LeapSource, Inc. v. GTCR Golder Rauner, LLC* provides additional support for that distinction. In considering whether Arizona law recognized aiding and abetting liability for a fraudulent transfer, the court specifically addressed *Banco Popular* and rejected the argument that its recognition of conspiracy liability supported a parallel aiding-and-abetting claim. 483 F. Supp. 2d 884, 918–19 (D. Ariz. 2007). Plaintiff identifies no controlling New Jersey authority making that extension, and the Court will not do so on default judgment. Count VII therefore cannot rest on the UFTA violation alleged in Count VI. Nor can this count survive on an alternative theory that Defendants aided and abetted Jigar's alleged common law fraud. An aiding-and-abetting fraud claim requires an actionable underlying fraud. *Qwest*, 387 N.J. Super.

at 484. As explained above, Count IV does not establish that predicate tort. Default judgment on Count VII will therefore be **DENIED** as to all Defendants.

**Count VIII—civil conspiracy.** *Banco Popular* expressly recognizes conspiracy liability where a third party knowingly agrees to and assists a fraudulent transfer. A civil conspiracy requires two or more persons acting in concert pursuant to an agreement to commit an unlawful act, or a lawful act by unlawful means, followed by an overt act that causes damage. *Banco Popular*, 184 N.J. at 177. A creditor pursuing a UFTA conspiracy must establish the agreement and knowledge components of conspiracy together with the underlying UFTA violation; an unwitting participant is not liable. *Id.* at 177–78.

The admitted allegations satisfy those requirements. The alleged sequence—Chirag's formation of Mahi and Jigar and Ashaben's conveyance to that newly formed entity controlled by Jigar's close relative—supports an implicit agreement among all three Defendants to place the Property outside Plaintiff's reach. Am. Compl. ¶¶ 94–96; *id.*, Count VIII ¶¶ 40–46. Mahi's formation and the execution of the quitclaim deed were overt acts in furtherance of that agreement, and the transfer was alleged to place a source of collection beyond Plaintiff's reach. The defaults admit those well-pleaded facts. The Default Judgment Motion is therefore **GRANTED** as to liability on Count VIII against Jigar, Ashaben, and Chirag. However, the amount of monetary relief, if any, under Count VIII is **RESERVED** because the Default Judgment Motion does not establish the damages resulting from the conspiracy or explain the basis for imposing any such damages on the conspirators without duplicating recovery under Counts I or VI. The new motion must identify the legally recoverable injury caused by the conspiracy, support its amount, and account for any overlapping recovery.

* * *

In sum, as to Plaintiff's fraud- and transfer-based claims, his Default Judgment Motion is **GRANTED** on Count VI to the limited extent that the admitted allegations establish an actual-intent fraudulent transfer, and **GRANTED** as to liability on Count VIII against all Defendants; default judgment is **DENIED** on Count VII. Plaintiff's requests to avoid the deed and enjoin further disposition of the Property are **DENIED** ***without prejudice***, and any monetary relief under Counts VI and VIII is **RESERVED**.

*4. The Chamberlain factors favor default judgment*

The *Chamberlain* factors support judgment on the legally sufficient claims.

*First*, Plaintiff would be prejudiced if default judgment were denied. This action has been pending since 2021, and Defendants' refusal to participate in discovery has prevented an adjudication through the ordinary adversarial process. Without default judgment, Plaintiff would have no practical means to enforce the obligations and transfer liability established by the admitted allegations.

*Second*, the defense factor is mixed, but does not bar judgment. Jigar and Ashaben have not offered a litigable defense and have not sought to vacate their defaults. Chirag has identified a potentially litigable defense concerning good faith and value, but the Court has already considered that defense under Rule 55(c) and concluded that it does not justify reopening the default. The Court has also tailored the relief to the showing actually made: it enters liability only on legally sufficient claims, reserves unresolved monetary relief pending further proof, and declines to impair Mahi's property rights in its absence.

*Third*, culpability strongly favors default judgment. These defaults were not entered because of a single failure to plead. They followed repeated discovery violations, missed deadlines, direct warnings, a lesser sanction, a final opportunity to cure, and an unopposed recommendation that the Answers be stricken with prejudice. *See* First R&R; Second R&R;

Default Order. The Court has already found that the conduct was repeated and willful. Default Order at 3–4. Taken together, the *Chamberlain* factors favor default judgment on the legally sufficient claims—Counts I, VI, and VIII—as limited above.

*5. Damages, punitive damages, attorney's fees, and costs*

Plaintiff bore the burden of establishing the monetary relief requested in the Default Judgment Motion. Although the record supports the discrete discovery sanction discussed below, it does not establish most of the remaining monetary relief Plaintiff seeks. The deficiencies are not merely matters of arithmetic. Plaintiff asks the Court to calculate the contract debt using a disputed interest term and annual compounding interest, credit four years of prior payments, add post-maturity and prejudgment interest, impose additional monetary liability under Counts VI and VIII, and shift most of his attorney's fees jointly and severally to all three Defendants. Yet the Default Judgment Motion does not supply the legal and evidentiary foundation necessary to enter those awards. Default does not fill those gaps. *PPG Indus.*, 47 F.4th at 161 (explaining that default does not establish the amount of damages and that the court must determine damages that are not a sum certain); *Gen. Elec. Cap.*, 2016 WL 756559, at *2 (denying default judgment where a conclusory certification did not permit the court to determine the claimed damages with reasonable certainty).

Because Plaintiff bears the burden of proving the monetary relief he seeks, the Court cannot supply the missing legal theories, evidentiary support, or calculations on his behalf. The Court therefore reserves the unresolved monetary relief and directs Plaintiff to file a renewed motion that addresses, with competent proof and supporting authority, each deficiency identified below.

As to Count I, the renewed motion must present a transparent calculation beginning with the loan advances and ending with the amount sought. The submission should first identify the legal basis for enforcing twelve-percent interest notwithstanding the written three-percent terms,

distinguishing among the theories suggested by the present record: a contemporaneous oral agreement, a later modification, and course of performance. It should then explain whether and how the $60,000 payments in 2017 and 2018 and the $50,000 payment in 2019 establish part performance, course of performance, or mutual assent to a later modification, and why Plaintiff treats $40,000 as the twelve-percent interest due for 2016 when the $500,000 was advanced in installments during that year. The renewed motion also must address the legal effect of the Combined Note and Plaintiff's reliance on N.J. Stat. Ann. § 25:1-5(f), reconcile the conflicting evidence concerning whether the $210,000 in payments represented interest, principal, or both, credit those payments on the dates made, distinguish pre-maturity from post-maturity interest, and separately identify any prejudgment interest and the equitable basis for awarding it. The Court has already rejected annual compounding. *See supra* Section III.B.3.a. A requested number without its governing formula and factual inputs is insufficient. *Knights Franchise Sys. v. Imperial Lodgings*, No. 14-6121, 2017 WL 1535090, at *4 (D.N.J. Apr. 26, 2017).

As to Count VI, the new motion must establish both the legal basis and measure of any monetary recovery against a Defendant presently before the Court. Because Mahi is the first transferee but is not a party, Plaintiff must identify which named Defendant, if any, may be held liable under N.J. Stat. Ann. § 25:2-30(b), explain the statutory basis for that liability, and address the applicable statutory limits and defenses. Plaintiff must also support the amount sought with competent evidence concerning the value transferred and the consideration paid and explain how any award under Count VI would avoid duplicating recovery on Count I.

As to Count VIII, Plaintiff must identify the compensable injury resulting from the conspiracy and establish the measure of any monetary relief attributable to that injury. Because conspiracy liability rests on the underlying wrong rather than creating a separate duplicative recovery, Plaintiff must explain the basis for imposing the resulting loss on the conspirators and

how any judgment under Count VIII should account for relief awarded under Counts I or VI. Any amount sought must likewise be supported by competent evidence rather than by reference to the amount demanded in the Amended Complaint.

Punitive damages will be **DENIED**. Plaintiff sought punitive damages principally on his intentional tort theories, but default judgment is denied on Counts IV and VII. The remaining liability determinations on Counts I, VI, and VIII do not, without more, establish by clear and convincing evidence the actual malice or wanton and willful disregard required by New Jersey's Punitive Damages Act. N.J. Stat. Ann. § 2A:15-5.12(a). The admitted allegations therefore do not establish entitlement to a punitive award.

Plaintiff has established entitlement to reasonable attorney's fees and court costs against Jigar under the Combined Note. New Jersey strictly construes contractual fee-shifting provisions because fee shifting is disfavored. *Litton Indus.*, 200 N.J. at 385. But Jigar is expressly required to pay "all costs of collection and enforcement, including reasonable attorney's fees and court costs." *See* Combined Note. As the Court is entering default judgment against Jigar on Count I, Plaintiff is entitled to a reasonable award of attorney's fees and court costs against Jigar.

The Court will not fix the amount of that contractual award yet. Plaintiff seeks nearly $270,000 in fees and costs,[5] while the Court has reserved the enforceable interest rate, the proper crediting of the $210,000 in prior payments, and the monetary relief available on Counts VI and

[5] The Combined Note entitles Plaintiff only to *reasonable* attorney's fees and court costs. Given the substantial amount requested—$262,393.72 in attorney's fees alone—and Plaintiff's success on only some claims, the renewed application must provide a particularized basis for concluding that the amount sought is reasonable. It is not enough merely to resubmit the existing billing records or assert that all work performed was necessary. Plaintiff must identify the fees it contends remain compensable in light of the Court's rulings, explain the treatment of work devoted to unsuccessful claims, address any duplicative or otherwise unnecessary work, and provide a reconciled fee calculation reflecting any resulting reductions. *See Litton Indus.*, 200 N.J. at 387–91.

VIII. Those determinations will define the extent of Plaintiff's success. The Court must consider whether a fee award should be reduced when the applicant succeeds on only some claims. *Litton Indus.*, 200 N.J. at 387–91. The amount of Jigar's contractual fee obligation is therefore **RESERVED** until the Court resolves the remaining monetary relief.

That contractual entitlement does not extend to Ashaben or Chirag. Plaintiff identifies no authority extending Jigar's undertaking to either Defendant. DJ Mot. at 28–31. Any fee request against Ashaben or Chirag must therefore identify an independent statutory, rule-based, or sanctions basis and tie the amount sought to conduct attributable to that Defendant. *See Satellite Gateway Commc'ns, Inc. v. Musi Dining Car Co.*, 110 N.J. 280, 285–86 (1988) (holding that attorney's fees are unavailable absent authorization by statute, court rule, or contract and declining to extend a contractual fee provision to a party not entitled to fees under its terms).

Plaintiff also bears the burden of substantiating the amount of the reserved fee award. Even in a default judgment case, the fee applicant must support the hours and rates claimed, and doubts created by inadequate documentation are resolved against the award. *Spectrum Produce Distrib. v. Fresh Mktg.*, No. 11-6368, 2012 WL 2369367, at *4–6 (D.N.J. June 20, 2012). The Fee Supplement's presentation also requires reconciliation. It lists $262,393.72 in fees and $9,858.15 in costs, which sum to $272,251.87, while reporting $272,476.82. Fee Supplement ¶ 4. D.E. 134-2 explains that Plaintiff directly paid a $224.95 court reporter charge and that the firm reduced its billing record by that amount. D.E. 134-2 ¶¶ 68–69. And the Fee Supplement's stated $272,476.82 total equals the $269,998.27 requested jointly and severally in paragraph 8 plus the separate $2,478.55 requested against Jigar in paragraph 9. *Id.* ¶¶ 8–9. Because the Court awards the separate $2,478.55 below, the renewed motion must reconcile the remaining figures, explain which work falls within Jigar's contractual obligation or any independent basis asserted against

Ashaben or Chirag, account for work devoted to claims on which default judgment has been denied, and exclude the $2,478.55 to avoid duplication.

Plaintiff's separate $2,478.55 request against Jigar can be resolved now. The Discovery Order required all depositions to be completed by November 30, 2024. D.E. 116. Jigar failed to appear for the November 14, 2024 second day of his deposition despite knowing that Plaintiff's counsel and a court reporter awaited his attendance, and the Second R&R found that he had evaded completing the deposition despite no fewer than four notices. Second R&R at 3–4. Plaintiff renewed the previously deferred request with the Default Judgment Motion, and counsel certifies that the expenses related to that failure total $2,478.55—$2,252.50 in attorney's fees and $226.05 in costs—to be assessed against Jigar alone under Rule 37(b)(2)(C). D.E. 134-2 ¶ 82; Fee Supplement ¶ 9. Jigar did not oppose the Motion to Strike, object to either R&R, or respond to the Default Judgment Motion. On this record, the Court will **AWARD** Plaintiff $2,478.55 against Jigar. That amount may not be recovered again as part of the later contractual fee award.

The Court will not refer the remaining issues for a proof hearing at this stage. Rule 55(b)(2) permits the Court to require additional proof before deciding whether testimony is necessary. *Basara* followed a similar sequence: it granted default judgment as to liability, reserved damages, attorney's fees, and costs, and directed the movant to supplement the record before proceeding further on damages. 2013 WL 3513873, at *3, *5. Liability, contractual fee entitlement against Jigar, and the discrete Rule 37 award have now been resolved; Plaintiff must supply a complete legal and evidentiary basis for the remaining monetary relief and fee amounts. The Court will then determine whether any discrete factual issue requires testimony.

* * *

The Court will therefore **RESERVE** Plaintiff's requests for compensatory damages on Counts I, VI, and VIII, non-compound contractual and prejudgment interest, the amount of the

contractual award against Jigar for attorney's fees and court costs, and any remaining fee or cost request against Ashaben or Chirag. Plaintiff's contractual entitlement against Jigar is established, and the separate $2,478.55 discovery sanction is awarded by this Opinion. For the reserved relief, Plaintiff remains responsible for proving the amount of Jigar's contractual fee award and both the legal basis and amount of any fee request against Ashaben or Chirag. The Court will afford him one opportunity to complete that showing. Within forty-five days, Plaintiff shall file one new motion limited to those forms of monetary relief left available by this Opinion. The motion must be self-contained and include all legal authority, calculations, documentary evidence, certifications, billing records, and other materials on which Plaintiff relies, together with a proposed final judgment. It may not revive claims or remedies denied in this Opinion, including compound interest, punitive damages, or avoidance and injunctive relief affecting the absent entities; it need not rebrief Plaintiff's entitlement to contractual fees against Jigar; and it shall not duplicate the $2,478.55 awarded above. No further supplementation of that motion will be permitted absent good cause and leave of Court. Defendants may respond to the new motion within fourteen days after service; no reply may be filed without leave. After reviewing the submissions, the Court will determine whether any remaining factual issue requires a limited hearing under Rule 55(b)(2).

## IV. CONCLUSION AND ORDER

Accordingly,

**IT IS** on this **10th** day of September, 2026,

**ORDERED** that Chirag Patel's Motion to Vacate Default, D.E. 142, is **DENIED**; and it is further

**ORDERED** that Plaintiff's Motion for Default Judgment, D.E. 134, is **GRANTED in part**, **DENIED in part**, and **RESERVED in part** as follows:

(1) the Motion is **GRANTED** as to liability against Jigar Patel on Count I; Plaintiff's request for compound interest is **DENIED**; and the remaining monetary relief on Count I is **RESERVED**;

(2) the Motion is **DENIED** as to Counts III, IV, V, and VII;

(3) the Motion is **GRANTED** on Count VI to the limited extent the Court determines, as between the parties before it, that the admitted allegations establish an actual-intent fraudulent transfer under N.J. Stat. Ann. § 25:2-25(a); Plaintiff's requests to avoid the deed and enjoin further disposition of the Property are **DENIED *without prejudice***; and the request for monetary relief on Count VI is **RESERVED**;

(4) the Motion is **GRANTED** as to liability against Jigar Patel, Ashaben Patel, and Chirag Patel on Count VIII, and the request for monetary relief on Count VIII is **RESERVED**; and

(5) the request for punitive damages is **DENIED**; and it is further

**ORDERED** that Plaintiff's request for reasonable attorney's fees and court costs against Jigar Patel under the Combined Note is **GRANTED** as to entitlement, and the amount of that award is **RESERVED**; and it is further

**ORDERED** that Plaintiff is **AWARDED** $2,478.55 against Jigar Patel pursuant to Federal Rule of Civil Procedure 37(b)(2)(C), consisting of $2,252.50 in attorney's fees and $226.05 in costs arising from his failure to appear for the November 14, 2024 deposition; and it is further

**ORDERED** that Plaintiff's remaining requests for attorney's fees and costs against Ashaben Patel and Chirag Patel are **RESERVED**; and it is further

**ORDERED** that, within **45 days**, Plaintiff shall file one new motion limited to the reserved monetary relief, the amount of the contractual award against Jigar for attorney's fees and court costs, and any remaining fee or cost request against Ashaben Patel or Chirag Patel identified in this Opinion; the motion shall be self-contained and shall include all legal authority, calculations, evidence, billing materials, and a proposed final judgment on which Plaintiff relies; the motion need not rebrief Plaintiff's entitlement to contractual fees against Jigar and shall not duplicate the $2,478.55 awarded above; and it is finally

**ORDERED** that Defendants may respond to the new motion within **14 days** after service; no reply or further supplementation shall be filed absent good cause and leave of Court; and the Court will determine after reviewing the submissions whether a limited hearing under Rule 55(b)(2) is necessary.

Evelyn Padin, U.S.D.J.